No. 30,739.

FRANK V. DAWSON, *Appellee and Cross-appellant*, v. WILLIAM T. DAWSON and THE BANKERS MORTGAGE COMPANY, *Appellants and Cross-appellees* (LOUISE DAWSON, NANCY C. DAWSON, JULIA W. GILL, F. D. GILL, BLANCHE DAWSON and EMMA E. LANHAM, *Appellees and Cross-appellants*).

(16 P. 2d 946.)

Opinion filed December 10, 1932.

*Lester M. Goodell, N. J. Ward* and *F. A. Holder,* all of Topeka, for the appellants.

*Perry W. Seaton, J. E. Addington* and *Howard A. Jones,* all of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was commenced by Frank V. Dawson, one of five owners in common, against the other four owners to partition land. A judgment of partition was entered, but before steps were taken to effect partition the court rendered judgment foreclosing a mortgage given by one of the defendants, William T. Dawson, to the other four owners, of his undivided one-fifth interest in the land, and his interest was sold at sheriff's sale to the other four. William T. Dawson, and a creditor having a judgment lien on William T. Dawson's one-fifth interest, appealed from orders made and judgments rendered in the course of the proceedings.

The original owner of the land was Benjamin F. Dawson. He died in 1916, and his estate was settled. In October, 1929, his widow, Susan M. Dawson, died intestate, and the five Dawson children, Frank, William, Emma, Nancy and Julia, became owners of the land in controversy. Susan Dawson had executed mortgages of the land, taxes were unpaid, and there were unsecured claims against her estate. The entire indebtedness was funded into a mortgage given by all the owners to the Connecticut Mutual Life Insurance Company, dated January 28, 1930. This mortgage was executed pursuant to a written contract signed by all the owners. The contract contemplated a mortgage for $12,000, but that sum would not cover expense connected with procuring a sufficient loan, and the mortgage in fact given pursuant to the contract was for $13,000.

One of the mortgages taken up by the $13,000 mortgage was a mortgage for $6,000, executed by Susan M. Dawson to the National Bank of Topeka. That mortgage in fact represented an indebtedness of William T. Dawson. The contract enumerated all the debts of the estate to be satisfied by proceeds of the loan to be obtained, and contained the following provisions relating specifically to the mortgage to the National Bank of Topeka:

"It is understood and agreed between the parties hereto that there is a second mortgage on said real estate dated the 21st day of March, 1928, in the

sum of $6,000, and drawing interest at the rate of six per cent per annum, and this indebtedness is an obligation of William T. Dawson.

"It is further agreed that William T. Dawson will execute and deliver a mortgage in the sum of $6,000, with interest thereon at the same rate as that provided in the $12,000 mortgage to be procured, and that said $6,000 mortgage of the said William T. Dawson shall be made to the four other heirs who are his brother and sisters, and that it shall be a. lien on his undivided one-fifth interest in said real estate. This provision and agreement is made on account of the fact that the $6,000 mortgage now on the real property is in fact the obligation of William T. Dawson, and is due and owing by him to the estate."

Pursuant to the contract, William gave a note to his brother and sisters for $6,000, dated January 28, 1930, and payable two years after date, with interest at the rate of six per cent per annum, and secured the note by a mortgage of his one-fifth interest in the land.

The contract provided that William should act as agent for all parties to lease the land, collect rents, pay taxes, make repairs, keep up insurance, pay interest on the $13,000 mortgage, and in general act for all the heirs. The contract also provided that William should keep proper accounts, and keep funds in his hands as agent in the National Bank of Topeka, in an account designated "Agent Dawson estate." The contract also provided as follows:

"It is further agreed that this arrangement is a temporary one, and that the signers of this agreement, or any party thereto, are not bound or hindered from at any time insisting on a sale of said real estate, either private, public, or by order of any court of competent jurisdiction."

The action of partition was commenced by Frank Dawson on February 17, 1931. The petition contained allegations appropriate to such an action. The petition alleged execution and delivery by William of the note to his brother and sisters and of the mortgage securing it, and alleged that the note and mortgage were in default. The petition also alleged breach of duty on the part of William as agent of the Dawson estate, and prayed for an accounting. Portions of the prayer of the petition were that William's interest in the land be charged with $6,000 and interest, and that William's brother and sisters recover four-fifths of such sum as might be due on the accounting.

The petition prayed for appointment of a receiver, and a receiver was appointed who has had full charge of the land. An accounting was had, and a balance was found in favor of William as agent for the Dawson estate. On December 31, 1930, the Bankers Mortgage Company of Topeka obtained a judgment against William Dawson

for debt and costs amounting to $1,409.10. The Bankers Mortgage Company was made a party to the action, and set up its lien on William Dawson's one-fifth interest in the land. This judgment was a lien inferior to all other liens, and was so recognized throughout the proceedings.

On July 10, 1931, the court rendered judgment declaring that each one of the five Dawsons was the owner of a one-fifth interest in the land. The judgment declared the $13,000 mortgage was not due and was not payable, but was a first lien on the land. The judgment also contained the following recitals:

"That the one-fifth (⅕) interest of the defendant, William T. Dawson, be and the same is hereby charged with the $6,000 mortgage and interest on the same at the rate of six (6%) per cent per annum from the 28th day of January, 1930, and which amount should be paid in equal shares to the plaintiff, Frank V. Dawson, and defendants, Nancy C. Dawson, Julia W. Gill, Emma E. Lanham, and that said amount should be a second lien on the one-fifth interest of William T. Dawson. . . .

"It is therefore considered, ordered, adjudged and decreed by the court that partition be made of said real estate according to the interest of the respective parties herein specified; that the accounting herein be and the same is hereby approved; that the amount found due the defendant, William T. Dawson, under said accounting, be set off against the interest owing by W. T. Dawson on the $6,000 note and mortgage hereinbefore described.

"A further order will be made appointing commissioners to make partition, and for appraisal, and a further order as to the manner of sale, and order as to costs and expenses pertaining thereto, including attorneys' fees and an allowance for the receiver."

A motion for new trial was filed by William Dawson and the Bankers Mortgage Company, which was denied, and they appealed.

While the appeal was pending, and in January, 1932, Frank Dawson filed a motion in which his sisters joined, for leave to amend the petition to pray for judgment foreclosing the $6,000 mortgage on William's one-fifth interest in the land. Leave to amend was granted, and the reasons for adopting this course were stated in the order as follows:

"That at the time of the entering of the judgment in this cause it was thought by the parties hereto that a partition sale could be had of the real property involved in this cause, and that the liens could be satisfied out of the proceeds of said sale, but since entering said order it has been found that on account of the existing market for the sale of land that said land could not be disposed of except at a great sacrifice to all the parties in interest.

"That it is now deemed to the best advantage and interest of all the parties to this action to have said land divided in kind, if the same can be done, and that said mortgage on the undivided one-fifth (⅕) interest of William T.

Dawson should be sold to satisfy the lien of said mortgage, thereby clearing the title of the land involved in this action of the liens upon it, other than that of the $13,000 first mortgage.

"The court further finds that to clear the title to the undivided one-fifth (⅕) interest of the said William T. Dawson in and to said land, a sale should be had under the mortgage to establish the rights of the mortgagees and the rights of the third lien holder, the Bankers Mortgage Company, a corporation."

The petition was amended pursuant to the order, and on March 18, 1932, judgment was rendered accordingly. The judgment against William Dawson was for the full amount of the note with interest. A sale was made, and the land was purchased by Frank, Emma, Nancy and Julia Dawson, for $5,500. The reasons for foreclosure were again stated, in the journal entry, as follows:

"That due to the present depressed market for the sale of real estate and the numerous liens existing against the property herein involved, it will be to the best interests of the parties that the lien of the $6,000 second mortgage and the judgment-lien of the Bankers Mortgage Company be foreclosed and the title to the property cleared so far as possible before final partition.

"The court further finds that it is to the best interest of the parties to foreclose the $6,000 second mortgage before final partition because if this foreclosure is had after partition it will result in the parties having their interest divided into two separate tracts instead of all in one tract as will be the case under a foreclosure at this time.

"The court further finds that, due to the financial inability of the parties to protect themselves at a partition sale, it will be to their best interest to get the title to the property in shape to partition it in kind if necessary.

"The court further finds that, due to the depressed value of real estate, the undivided one-fifth interest of William T. Dawson is not equal to the amount of the liens of the first and second mortgages and interest thereon, which are against it."

Appeals were duly taken from the foreclosure proceedings by William Dawson and the Bankers Mortgage Company.

In his answer to the original petition, William Dawson asserted there was a mistake in the amount of the note and mortgage to his brother and sisters, that the true amount should have been $4,800, because that was his obligation to the Dawson estate, and that there was no consideration to the payees of the note for the full sum of $6,000.

The nature, purpose and consideration for the $6,000 note and mortgage were established by the written contract settling the financial affairs of the Dawson estate as between the heirs, and providing for the note and mortgage. The contract specifically recited that the $6,000 mortgage to the National Bank of Topeka was the obligation of William, that this obligation was due and owing, not

to Frank and his sisters, but to the Dawson estate, and that William's note and mortgage were to be given on account of the note and mortgage to the bank. Frank Dawson's petition pleaded this contract, and the answers of his sisters concurred in the petition.

At the trial William Dawson explained the origin of the $6,000 mortgage to the National Bank of Topeka. His mother gave the mortgage, but he got the money, and he received nothing else. There was no testimony on the subject except that of William Dawson. In the course of his examination, which need not be extended at length on these pages, he returned an inept answer to a single question. The answer was not sufficient to raise a conflict in his own testimony, much less to contradict the written contract, the nature and effect of which were unmistakable.

For the purpose of the partition suit, William's note for $6,000 was, in legal effect, an asset of the Dawson estate, the same as if it had been made to his mother when she gave her note and mortgage to the National Bank of Topeka; and William's mortgage to Frank and his sisters was simply security to them for payment of their distributive shares of that particular Dawson asset.

The Dawson heirs were avoiding administration of their mother's estate. After specifying all the indebtedness of the estate of Susan Dawson, and after stating her mortgage to the National Bank of Topeka was in fact the obligation of William Dawson, the contract continued as follows:

"It is agreed by and between the parties hereto that the land above described will not sell to the best advantage at this particular time, and that in order to avoid a sale to pay debts of said estate, they are to make a loan on said real estate to provide the payment of all the above-mentioned indebtedness, and hereafter to provide for the repayment of said loan as soon as practicable."

The result is, the $13,000 mortgage represented debts of the estate in that sum; $7,000 of the amount represented debts which the estate alone should pay; $6,000 represented a debt of the estate, but a debt which William should pay. If William should pay that sum to the estate he would discharge his obligation to the estate. If the sum were applied on the $13,000 mortgage, the remaining $7,000 would be an equal obligation of all five heirs. If the $6,000 were distributed among the heirs, William Dawson would receive his share, one-fifth, or $1,200, and the other heirs would collectively receive the remainder, $4,800.

From the foregoing it is manifest that the judgment charging William Dawson with the full sum of $6,000 and interest, the judgment

against him for the full sum of $6,000 and interest, and the foreclosure judgment and proceedings, were all erroneous. Besides that, the court is unable to concur in the theory of the foreclosure proceeding stated by the district court. At first, partition by sale of the entire tract was contemplated. Then partition by division of the tract was adopted. Partition, whether by sale or division, was of course to be subject to the $13,000 mortgage. In order to divide the tract into five parts it was not necessary to clear William's title by depriving William of all title. The simple procedure would be to allot him one-fifth of the land and charge that one-fifth with the proper liens. It may be that, because of the unsalability of land under present economic conditions, and because of the heavy burden of debt which William Dawson carries, he may not be able to make his share of the land discharge the liens upon it, much less save anything for himself. But the court was not authorized to conceive him as having no interest in the land and use the machinery of the law to make the conception a grim reality.

There is a cross appeal by Frank Dawson and his sisters. William Dawson was lessee of the land until his mother's death. He built a small barn on the premises, which was destroyed by fire. Afterwards he built a larger barn and built some fences. In the accounting the court found the land had been enhanced in value by the improvements, and allowed William Dawson $900 for the barn and $116.54 for the fences. The cross appellants contend William Dawson was just a tenant, and as such was not privileged to make a claim for improvements.

William Dawson was not merely a lessee. He was a coöwner in possession with consent of his cotenants, and the action was one for partition. The statute provides that in partition the court may make any order necessary to a just and equitable partition (R. S. 60-2114). This court has held that it is equitable to allow a cotenant for improvements which are not made simply for his comfort, convenience, and profit, but which are lasting and enhance the value of the land. (*McKelvey v. McKelvey*, 83 Kan. 246, 249, 111 Pac. 180; *Phipps v. Phipps*, 47 Kan. 328, 27 Pac. 972.) Therefore the court's order allowing the claim for improvements is approved.

The court made an order that the receiver should finance the cross appeal. This order was doubtless made as a corollary to the mistaken notion that William Dawson has no further interest in the land, and was erroneous.

It follows from what has been said that the foreclosure proceedings should be set aside *in toto,* and the costs of those proceedings should be taxed to Frank Dawson and his sisters. The land should be partitioned in kind, and one-fifth of the whole should be set off to William Dawson. William Dawson should be regarded as owing the other Dawson heirs collectively $4,800, with interest from January 28, 1930. He should be credited with the balance due him on the accounting, and he should be credited with his share of distributable funds in the hands of the receiver, if any. Personal judgment should be rendered against him in favor of his brother and sisters for the remainder. The $6,000 note and mortgage should be merged in the judgment and canceled. The judgment should be made a lien on William Dawson's individual tract. A time should be fixed within which William Dawson may pay the judgment. Leave should be given to apply for execution to enforce the judgment if not paid within the prescribed time. The judgment should be a lien inferior to the $13,000 mortgage, and the Bankers Mortgage Company's lien should be inferior to the other two liens.

So far as the judgment of the district court is in consonance with the views just expressed, it is affirmed. In all other respects the judgment is reversed, and the cause is remanded for further proceedings.