**HASSELL v. WORKMAN et al.**

No. 35598.

Supreme Court of Oklahoma.

July 7, 1953.

Rehearing Denied Sept. 15, 1953.

O. B. Martin, Oklahoma City, for plaintiff in error.

V. P. Crowe, William J. Holloway, Jr., and Embry, Johnson, Crowe, Tolbert & Boxley, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

In 1945, plaintiff in error and the defendant in error, Robert F. Workman, purchased, along with other property, two adjoining lots in Oklahoma City, with a building thereon suitable for use as a warehouse. This investment appears to have been in the nature of a joint adventure, wherein plaintiff in error originally furnished all of the money for the purchase price of these properties and title thereto was taken in his name, with the understanding that Workman was to manage them and reimburse his said joint adventurer in one-half of the amount of the original investment and in return receive title to an

undivided one-half interest therein. After this arrangement had been fully carried out over a period of several years, with both parties sharing equally in the income therefrom, and all except the warehouse property had been sold, plaintiff in error became dissatisfied and brought this action for a partition of said remaining property in December, 1950. Workman and his wife, hereinafter referred to as defendants, defended said action, on the grounds that a partition of the property would defeat the purpose of the parties in purchasing same, and that plaintiff was then estopped from seeking partition because of a previous agreement had with him not to do so, and that a partition under the circumstances would be an instrument of fraud and oppression. After a trial without a jury, judgment was entered for the defendants without prejudice to the future right of either of the parties to partition the property "upon showing a reasonable change in conditions * * *."

In this appeal from said judgment, plaintiff takes the position that under our statutes authorizing partition of real estate he was entitled to the relief he sought as a matter of absolute right under the authority of Wolfe v. Stanford, 179 Okl. 27, 64 P. 2d 335, as applied to the evidence in this case. He maintains that the evidence is insufficient to sustain the defendants' burden of proof that he agreed to forego his statutory right of partition or that such a separation of his and defendants' one-half interests would work any fraud or oppression on them.

The undisputed facts are that the total purchase price of all of the properties purchased at one and the same time was $34,700. The total price at which they, other than the warehouse property, were later sold was $25,000, leaving a total investment in said remaining premises here involved, of $9,733.56. The defendant Workman, testified that when he went to plaintiff's office to deliver to him his check for one-half of this sum as payment for his undivided one-half interest, he and plaintiff discussed the advisability of arranging a physical separation of their half interests in the premises. Said defendant further testified

that he suggested "that sometime later somebody might acquire a half interest, upon the death of either of us, and they might get partition suits on it." He further testified: "We both agreed that we had nothing to worry about, * * * He said and I agreed that there would be no partition suits brought by either one of us." When plaintiff was interrogated about such a conversation, he replied, in substance, that he did not remember such things being said.

At the time of the trial, the parties were receiving a rental of $630 per month for the premises under a lease with a warehouse company which was not to expire until January, 1952. Plaintiff testified that the management of the premises by the defendant Workman had always been satisfactory and no attempt was made to show that he could not sell his undivided half interest therein just as advantageously, or more so, at a voluntary sale of said interest by itself, as through a sale of the entire fee. It further appears that the defendant Workman had never objected to plaintiff selling his interest, but on the contrary, had offered to assist him in doing so. Said defendant's testimony was to the effect that the property would not bring as high a price at an involuntary auction sale, as at a voluntary sale. He also indicated that he didn't wish to sell his interest because he did not know of any other investment, in which so little money would bring such a handsome return. It was also shown that as the property is now worth between sixty and sixty-five thousand dollars, the income tax on the proceeds of the sale of either of the undivided one-half interests at its present market value would be substantial.

There were no other witnesses except the plaintiff and the defendant, Workman; and the latter's testimony as to the parties' agreement not to partition the property was positive and unequivocal, as compared with that of the plaintiff, who never did positively deny that he entered into such an agreement, although his counsel seeks to cast doubt upon Workman's veracity by pointing to the circumstance that no such agreement was ever made as to the other properties the parties purchased jointly. On the premise that the trial court

was justified in accepting Workman's version as the true one and concluding that such an agreement was in fact made, defense counsel assert that by said agreement plaintiff gave up any right to partition he might otherwise have had, and under McInteer v. Gillespie, 31 Okl. 644, 122 P. 184, he was thereafter estopped to assert such a right. According to the author of the annotations at 132 A.L.R. 666, 667, there is respectable authority for the proposition that partition as an absolute right "was never intended to interfere with contracts between the tenants modifying or limiting this otherwise incidental right * * *." However, it may be argued that as the right to partition arises from the law rather than private contracts, Sweeney v. Bay State Oil & Gas Co., 192 Okl. 28, 133 P.2d 538, and is favored at law, such right cannot be divested by contract, or that such contracts are at least contrary to the policy of the law and the courts will not lend their aid to their enforcement. We think it manifest from the character of the particular judgment herein reviewed (specific reference to which has been made) that the court did not recognize, or at least effectuate, the principle defendant contends for, i. e., that plaintiff is forever estopped by the agreement asserted against him, from enforcing his right to partition. It appears to us that the trial judge based his decision upon the broader, if not firmer, ground of his inherent equitable power to prevent fraud or oppression by refusing the partition plaintiff sought. Plaintiff's counsel recognize that in Wolfe v. Stanford, 179 Okl. 27, 64 P.2d 335, 338, it was held that such a court is vested with sufficient discretion in denying or awarding relief to prevent an oppressive result, but they quote a statement therein made as authority for the proposition that a denial of partition can only be justified in the "most extreme cases", and they argue that there is no evidentiary basis for treating this as such a case. An examination of our opinion in the Wolfe case renders it manifest that there we recognized that there are exceptions to the rule that "hardship to one or more cotenants constitutes no basis for a denial of the partition right." One of the questions there dealt with was whether, *inability of one or more of the cotenants to purchase* at a partition sale, would be deemed such an exception. When we made the statement counsel alludes to we had just concluded that such inability should not constitute a defense "under *ordinary* circumstances, that is, in the absence of approaching development or rapidly increasing values." (Emphasis added.) In adopting the view that such inability *could,* under certain circumstances therein described, constitute such a defense, we said we realized the hazardous and "treacherous" implications of such a view and it was then that we forewarned litigants against reliance upon it in any but extraordinary or "extreme" cases. In that opinion, after quoting a clear and concise statement from Willard v. Willard, 145 U. S. 116, 12 S.Ct. 818, 36 L.Ed. 644, showing that partition, although a matter of right, is subject to the court's equitable powers, and citing our partition statutes, it was also said:

"There is nothing in the statute which declares the right to be absolute or unqualified. Generally, it is, but this, as we have previously seen, is true by reason of the generally applicable principles of law independent of the statute. It follows that exceptions or qualifications of the general rule are not inconsistent with the statute and may be recognized in actions under the statute.

"The remedies and rights prescribed by the statute are cumulative, not exclusive, even when the case falls within the statute. * * * The remedy is in its nature equitable, even where statutes have been enacted dealing with the subject. * * *

"There being no statutory inhibition against the denial of relief, the power of the court is sufficiently broad to prevent the use of the remedy as an instrument of oppression."

In the above case, we reached an affirmative answer to the question of whether the power of our district courts is broad enough to include (in addition to granting it) the discretion to deny partition. In referring with approval to this conclusion, the court,

1084

in Holland v. Shaffer, 162 Kan. 474, 178 P. 2d 235, 241, 173 A.L.R. 845, said:

"It also, however, permits courts of equity to retain their inherent power to prevent fraud and oppression where that would be the result of partition. It likewise leaves courts free to exercise their equitable powers and to thus deal effectually with a cotenant who may arbitrarily refuse to cooperate for the common good of the cotenancy."

■ Our statement of fact has already shown that there was a lease on the property involved herein which did not expire until January, 1952, or almost six months after the case was tried in July, 1951. In addition to the other portions of the defendant's testimony hereinbefore referred to, his testimony was also to the effect that under this lease, possession could not be given a purchaser of the property until the lease's expiration date and this fact would diminish the price any prospective purchaser wanting immediate possession, would pay for it. Considering this and the other circumstances already referred to and entitled to consideration by the trial court, we cannot say that his apparent conclusion that a partition *at this time,* or until "a reasonable change in conditions" would work a hardship and be an "instrument of oppression" upon the defendant, was clearly against the weight of the evidence. In Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129, we recognized the equitable nature of the decrees and orders of the District Court in partition cases and held that same will not be disturbed by this court in the absence of a showing of substantial prejudice caused thereby. Here, there has been no showing of substantial prejudice to the plaintiff by the trial court's judgment, his appeal therefrom being predicated solely and arbitrarily upon the ground he was entitled to partition as a matter of right. Nor has there been any showing that the "intolerable situation with reference to control and use of the property" referred to in Wolfe v. Stanford, supra, exists here. Nor has there been any showing in this case that the defendant has arbitrarily refused "to cooperate with the plaintiff for the common good of the coten-

ancy." He merely opposes a termination of it on equitable grounds. As hereinbefore noted from plaintiff's own testimony, defendant's management of the premises has always been satisfactory, and we find no proof of detriment in the continuance of such management and the parties' joint ownership at this time and in this record sufficient to justify a reversal of the judgment.

Said judgment is therefore affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and O'NEAL, JJ., concur.

WILLIAMS, J., dissents.