William MAUCH, Plaintiff in Error,

v.

Ruby MAUCH, Ruby Mauch as Administratrix of the Estate of Fred Mauch, Deceased, et al., Defendants in Error.

No. 41387.

Supreme Court of Oklahoma.

July 19, 1966.

Rehearing Denied Oct. 18, 1966.

Erwin & Erwin, Chandler, for plaintiff in error.

James & Butts, Stroud, for defendants in error.

DAVISON, Justice.

The parties occupy the same relative positions in this court as they did in the lower court and will be referred to by name or by their trial court designation.

William Mauch instituted the action on March 12, 1964, and by his petition and amendments thereto, sought partition of a 160 acre farm and other rural property located respectively in Lincoln County and in Tulsa County, Oklahoma. The controversy presented to this court involves only the 160 acre farm located in Lincoln County, and our reference herein to "the farm" refers only to the Lincoln County property. Plaintiff (William Mauch) further prayed that the lower court provide in its judgment that he be reimbursed in the sum of $4475.91, representing the alleged increased value of the farm by reason of certain improvements placed by him on the farm from 1947 through 1963. Plaintiff also asked that he be reimbursed for the ad valorem taxes paid by him from 1945 through 1962, and one-half of 1963, in the total sum of $791.57.

By answer and cross-petition and amendments thereto, the defendant Ruby Mauch, individually, and as Administratrix of the Estate of Fred Mauch, Deceased, prayed, inter alia, that the court decree partition and render judgment against plaintiff for the reasonable rental value of the farm from January 1, 1963. Defendant also alleged in substance that beginning in 1931 the farm was operated as a family cotenancy by plaintiff and Fred Mauch (his brother) and Lena Mauch (their mother), under a mutually agreeable arrangement, whereby the benefits to plaintiff by reason of his use and occupancy of the residence (thereon) and the improvements and a part of the farm more than compensated plaintiff or offset plaintiff's claimed expenditures and improvements.

After trial of the case the court rendered judgment decreeing partition. The judgment further denied plaintiff any recovery for the taxes or the improvements, but awarded him a movable metal grain bin. The court found from competent evidence the reasonable rental value of the farm to be $500 per year and rendered judgment in favor of the defendant Administratrix for one-half thereof from the death of Fred

Mauch (June 17, 1963) to delivery of the partition deed. The trial court made the following statement:

"The Court is of the opinion it should not go behind the death of Fred Mauch and this question of rent from the co-tenant or the improvements either one— these parties adapted their own attitudes up to the time of his death and apparently the arrangement was satisfactory to everyone and what they did was agreeable to all at the time and they did it knowing they were in a co-tenancy. Most of the improvements made were made prior to the death of Fred, so The Court is not going to allow the plaintiff any recovery for taxes or improvements prior to the death of Fred, nor allow the defendant any recovery for rent and profit prior to the death of Fred. * * *"

Plaintiff urges that the court erred in denying him any recovery for the taxes and for the increased value of the farm by reason of the improvements. He also contends there was no justification for charging him the above rental.

■ This is an action of equitable cognizance and in such cases the Supreme Court will examine the entire record and weigh the evidence but will not reverse the trial court unless the judgment is clearly against the weight of the evidence. Bowen v. Hamilton, Okl., 393 P.2d 858.

The record reflects that the farm was originally owned by Charles Mauch and that he died in 1931 and the property was distributed by probate decree to his widow (Lena), and to his two sons, the plaintiff and Fred, each a one-third interest. The farm was the homestead and these three persons continued to reside thereon and farm the property. In 1940 plaintiff married and brought his wife to the farm and raised a family. Fred married the defendant Ruby on March 26, 1950, and he and Ruby thereafter resided a short distance away. Lena continued to live in the residence with plaintiff and his family until she died intestate in 1957. After Lena's death the title to the farm was vested one-

half each in Fred and plaintiff. Fred died intestate June 17, 1963, without issue. The partition judgment provides that his undivided one-half interest thereupon vested in his widow (Ruby) and the plaintiff in equal shares, but subject to the debts of Fred and any other charges and expenses in the administration of his estate.

During the years Lena lived with plaintiff she did not pay for anything. The plaintiff and Fred by arrangement farmed or used separate portions of the farm and got what each produced. It appears that on occasion they would change or swap the areas that each used or planted. According to plaintiff they "adjusted those things" between them "as they came about" and "he farmed part of it and I farmed part of it." The record shows that in 1963 Fred harvested a wheat crop from the part used by him.

Plaintiff testified that about 1947 or 1948 he built a brooder house and chicken house at an estimated cost of around $2100 and operated a chicken business because he "had to take care of my mother and stay there." At some later time the brooder house was practically destroyed by a storm and the hen house was later used for hay storage. We interpret the evidence to show that plaintiff depreciated these structures for tax purposes. In 1953 plaintiff bought a 1000 bushel movable grain bin at a cost of $340.68. This bin was awarded to plaintiff by the judgment. Beginning in 1956 plaintiff planted sixty or more fruit trees. It appears from the evidence that this was not operated as a commercial project and that plaintiff took the fruit produced by the trees. There is evidence that Fred furnished some of these trees. Value of the orchard was estimated at from $300 to $500. In 1961 plaintiff drilled a water well, equipped with electric pump, and built a well house, at a total cost of about $700. Plaintiff stated he did this for family use and to avoid hauling water, which he had been doing for 10 years, and because it was necessary for his livestock business. There was evidence that he had depreciated this for tax purposes. Plaintiff did testify that Fred promised to pay a part of the well cost, but never did. Plaintiff testified he had done considerable fencing on the place, but did not know exactly what amount. He produced checks totaling $336.09, dated from 1948 to 1961, representing a part of this cost. He stated that these checks "just as likely" were repairs to the existing fence. In connection with payment of the taxes from 1945 through 1963 the plaintiff claimed and took the statutory homestead tax exemption.

Plaintiff and his witnesses collectively valued the farm at from $18,000 to $20,000, and a value of from $13,000 to $15,000 without the improvements in question.

During his lifetime the deceased, Fred Mauch, engaged in custom farm work over the country and for this purpose had a considerable amount of farm machinery. This took about two-thirds of his time. The machinery remained at the farm when he was not using it in this work. He would also buy cattle and bring them to the farm until he disposed of them. After 1950 he kept a "lot of hogs" there. Even after his marriage he ate many of his meals with plaintiff. Defendant introduced checks of Fred Mauch totaling $230.15, for the years 1959 to 1961 as evidence of purchase of material for repairs, fencing and posts on the farm. There was testimony that the "conditions" and fencing around the place were "very run down." Plaintiff stated he had not kept the buildings in good repair, but denied he had let them run down. Photos introduced in evidence do support the view that all the improvements are in poor condition. Defendant's witnesses valued the farm at around $20,000 and worth $2000 less without the improvements in question.

As reflected by the above quoted statement, the trial court concluded from the evidence that the various acts and operations of the parties from the death of the father to the death of Fred reflected an arrangement satisfactory to all, whereby each used and occupied portions of the farm in

accord with their respective needs and wishes and their relationship as cotenants. It is obvious that the trial court considered the expenditures made by plaintiff as being consistent with his greater or more valuable use of the farm. Fred's death deprived the trial court of the benefit of his understanding of the express or implied arrangement under which the parties operated. The trial court clearly considered the equities in the matter. The salient features are that plaintiff used the residence on the farm as a home for him and his family; that for the greater part of the time the use of the farm was subject to the homestead rights of Lena; that the interests of the cotenants varied, in that during the life of Lena each owned a third and thereafter plaintiff and Fred each owned a half; and that the improvements made by plaintiff were for his use and benefit, and were in part depreciated by him for tax purposes.

Title 12 O.S.1961, Sec. 1516, provides:

"The court shall have full power to make any order, not inconsistent with the provisions of this article, that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

■ In Hargis v. Hargis, 181 Okl. 377, 73 P.2d 1129, 1130, we quoted with approval as follows:

" 'While the remedy of partition is statutory, the court in enforcing it has substantially the same powers as were exercised by courts of chancery under the former equity practice.' "

In Emery v. Goff, 203 Okl. 618, 225 P.2d 164, we held that under the above statute, in a partition action the trial court had full power to settle all of the equities between the parties in the partition action.

■ And in Hassell v. Workman, Okl., 260 P.2d 1081, we stated:

"The decree and orders of a district court in partition actions will not be disturbed on appeal in the absence of a showing of substantial prejudice."

■ Under the circumstances presented by the evidence and the law above quoted we cannot say that the judgment of the lower court, relative to the taxes paid by plaintiff and the improvements, is clearly against the weight of the evidence.

■ Plaintiff also complains the court erred in charging him for one-half ($250.-00) of the reasonable rental value of the farm, beginning with the death of Fred Mauch on June 17, 1963. Plaintiff does not claim that the amount is unreasonable.

Plaintiff argues that he has not collected rental from third persons and relies on the rule of law announced in Airington v. Airington, 79 Okl. 243, 192 P. 689, 27 A.L.R. 182, and other cited cases, that:

"A tenant in common in possession of the common property, who has received more than her just proportion of rents from third persons, but who is not holding the premises adversely or to the exclusion of her cotenants, is not liable to account to them for their proportion of the rental value of said premises, but must account to them for their proportion of the rents actually received from third persons, after deducting the sums expended for taxes and necessary improvements."

■ We point out, however, that in Kelly v. Dierks, 131 Okl. 217, 268 P. 193, 194, we stated:

"It seems to be now reasonably well settled that, where one is excluded from possession of common property by a cotenant, and such cotenant collects all rents, and does not account for same, he is liable to the excluded one for that proportion of the fair rental value of the property which the interest of the excluded party bears to the whole interest. (citing cases)

\* \* \* \* \* \*

"In view of the foregoing authorities, we are of the opinion that the trial court properly admitted evidence of the reasonable rental value of the premises in question during the period from 1920

to 1926 and properly rendered judgment for two-thirds of the rental value instead of two-thirds of the actual rents and profits received."

This presents the proposition of whether plaintiff excluded defendant from possession of the common property after the death of Fred in June, 1963. Fred had raised a wheat crop on the farm in 1963 and had harvested and took the same prior to his death. It was testified on behalf of defendant that subsequent to Fred's death and in the latter part of June, 1963, the plaintiff told defendant administratrix' attorney that Ruby Mauch "was not to come back out there;" that he (plaintiff) did not want to discuss with her the matter of Fred's interest in the farm and his property located on the farm and "didn't want to have her on the place." This was not disputed by the plaintiff.

It is obvious that the trial court construed this as an exclusion of Ruby Mauch, both individually and as administratrix, from the farm. In view of the definite and positive nature of plaintiff's statement we must agree that it amounted to an exclusion and evidenced an intent on his part to resist any occupancy or possession by Ruby Mauch. We do not find any error in the judgment in this respect.

We are of the opinion and hold that the judgment of the trial court is not against the clear weight of the evidence. Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, IRWIN, HODGES and LAVENDER, JJ., concur.

BLACKBIRD, J., concurs in part and dissents in part.

BERRY, J., dissents.

BERRY, Justice (dissenting).

I regret my total disagreement with the majority, but am unable to find any substantial basis in the record to support the judgment rendered, or the conclusion that such judgment need not be reversed because there is no showing of substantial prejudice. The importance of the questions involved, when weighed by past expressions dealing with rights of co-tenancy and application of settled rules governing partition of property, is far greater than mere affirmance of a trial court's judgment upon the ground it is not against the clear weight of the evidence.

Analysis of the matters advanced in support of this judgment reflects the reasoning as based upon these matters: Partition is a statutory remedy, but in such action the trial court has power to settle all equities between the parties. Concededly, both statements are correct, by statute and precedent. However, such thesis cannot support the conclusion that a judgment in a partition action will not be disturbed on appeal in the absence of a showing of substantial prejudice. Authority cited for the conclusion is Hassell v. Workman, Okl., 260 P.2d 1081.

It must be pointed out that the rule in Hassell, supra, was based upon the earlier case of Wolfe v. Stanford, 179 Okl. 27, 64 P.2d 335. In that case the basis of the rule was that nothing in the statutes permitting partition which makes the right of partition absolute; and, since there is no statutory inhibition against denial of relief by partition, a court may apply equitable principles to prevent partition from becoming a vehicle of fraud or oppression. The rule in Wolfe was applied to a specific class of property, to wit: mineral interests under property in an undeveloped area, and we held such property subject to partition.

The rule in Hassell, supra, evolved from an action brought by one co-tenant, who sought partition of a profitable business property upon the sole ground the statutes granted him an absolute right thereto. The court stated that there are equitable exceptions to the rule that hardship constitutes no defense to a co-tenant's partition suit. But, the judgment denying partition where the decree reserved the future right to seek partition upon showing of changed

conditions was held not clearly against the weight of the evidence nor prejudicial, where partition was based upon the asserted absolute right. The court found that partition would serve as an instrument for oppression of the co-tenant.

This decision (nor the Wolfe case) is not authority for a rule that a "substantial prejudice" must be shown by the co-tenant to result from a trial court's partition judgment.

The opinion avoids the settled rule governing partition expressed in Airington v. Airington, 79 Okl. 243, 192 P. 687, 27 A.L.R. 182, by attempting to apply the rule in Kelly v. Dierks, 131 Okl. 217, 268 P. 193. The Airington case applies the rule that a tenant in possession is entitled to deduct expenditures for taxes and necessary improvements, and is accountable only for the proportionate share of *rents actually received from third persons*. The majority opinion quotes from the body of the Dierks case to support the conclusion that, even though no rents were collected, the co-tenant was liable for the proportionate share of the rental value. The rule expressed in syllabus 1 of Dierks enumerates five elements which must combine to amount to ouster of a co-tenant. Casual reference to the syllabi in Dierks will reflect the failure of the record in this case to support the conclusion of the majority opinion as to ouster, which is predicated solely upon the fact that after Fred Mauch's death plaintiff admittedly said defendant was not to come back out there, as he didn't want her on the place.

The majority approves the trial court's construction of the evidence as an exclusion, or ouster, of defendant without regard to settled law that possession of one co-tenant is a holding for all, and in order to constitute ouster there must be actual repudiation of another co-tenant's rights. Ludey v. Pure Oil Co., 157 Okl. 1, 11 P.2d 102; Keeler v. McNeir et al., 184 Okl. 244, 86 P.2d 1004; Records v. Miles, 200 Okl. 62, 191 P.2d 918. The trial court found defendant had been excluded from the premises, which necessarily imparts defendant's ouster from possession. Such holding directly contravenes all prior decisions of this Court concerning what is necessary to constitute ouster. If the rule of the majority is to be the law we should overrule specifically our former decisions dealing with the subject.

Parenthetically, it is observed that the trial court accepted defendant's evidence of annual rental value of the farm and then charged plaintiff with one-half of that rental value. The pretended ouster occurred late in June, 1963, leaving less than half the year's rental value to be considered. In no event could plaintiff be charged with more than half of the annual rental for the remainder (5 months and thirteen days) of the year.

The vice which inheres in affirmance of this judgment lies not only in acceptance of the trial court's finding of exclusion and ouster, but accepts such finding as the basis for the refusal to enforce any equities arising in plaintiff's favor from 1957–1963. It is axiomatic that equity follows the law. 30 C.J.S. Equity § 103. Burns v. Woodson, Okl., 363 P.2d 233. And, this maxim is strictly applicable where the rights of the parties are clearly defined and established by law; which rule we recognized in York v. Trigg, 87 Okl. 214, 209 P. 417, where syllabus 7 states:

"Where the rights of parties to an action are clearly defined and established by law, equity has no power to change or unsettle such rights. The maxims of equity may be invoked to protect an existing right, but are unavailable to create a right where none exist. Equity follows the law."

The rule particularly applies where rights are fixed by statutory provisions. Our own statute, 41 O.S.1961, § 20, provides:

"If a joint tenant, or tenant in common, or tenant in coparcenary, have, by consent, management of the estate, and make repairs and improvements with the knowledge, and without objection, of his cotenant or coparcener, such cotenant or

coparcener shall contribute ratably there-·to."

That this statute, which should have been given controlling effect, was not considered by the trial court is abundantly clear.

However, absent statutory authority, the rule in equity has been stated:

"Although at common law, independent of statute, one cotenant cannot charge another with the value of improvements made by him upon the premises, unless they are made with the latter's consent, yet in equity a different rule is applied, and the court, acting upon the maxim 'he who seeks equity must do equity,' will decree an account and suitable compensation and take them into consideration in decreeing a partition of the premises, even though such improvements have been made without consent, or a promise of contribution, * * * when made bona fide, provided they are necessary, useful, substantial, and permanent, enhancing the value of the estate * * *." 29 L.R.A. 449, p. 452, and footnote annotations.

This has been the rule in common law states, prior to adoption of statutes, applied consistently from the case of Town v. Needham (1932) U.S., 3 L.Ed. 268.

In a partition sale the purchase money should be apportioned so party making improvements should have the increased value in addition to pro rata interest. Dean v. O'Meara (1868) 47 Ill. 120. The court will require payment of a ratable portion of the improvements or add the proportion to the share allotted the tenant in possession. Hitchcock v. Skinner, 1 Hoff. Ch., N.Y., 21 (1839). For permanent improvements which constitute an addition to value allowances will be made. Curtis v. Poland (1886) 66 Tex. 511, 2 S.W. 39. The court should deduct a proportionate amount for necessary and proper improvements by cotenant in possession. Scantlin v. Allison, 32 Kan. 376, 4 P. 618; Sarbach v. Newell (1883) 30 Kan. 102, 1 P. 30; Dawson v. Dawson, 136 Kan. 471, 16 P.2d 946. The same rule applies to taxes. Scantlin v.

Allison, supra. And see Emery v. Goff, 203 Okl. 618, 225 P.2d 164, acknowledging that our partition statutes were adopted from Kansas, came to us already construed, and thus are presumed to have been adopted as construed.

The proposition that a cotenant who makes valuable improvements is entitled to the enhancement of the value from such improvements is supported by text authority and multiplied dozens of decided cases from practically every state. 68 C.J.S. Partition § 139; American Law of Real Property, Ch. VII § 6.18; Powell on Real Property, V. 4, § 604; Thompson on Real Property, V. 4 § 1803, et seq.; 1 A.L.R. 1189; 27 A.L.R. 182; 98 A.L.R. 852.

No special attention is directed to the obvious error which inhered in the trial court's refusal to allow plaintiff reimbursement for taxes paid. This question is clearly settled under Airington v. Airington, supra; Rodesney v. Hall, Okl., 307 P.2d 131; Manor v. Liles, Okl., 319 P.2d 310. The majority opinion seeks to avoid this rule by asserting that where a cotenant is excluded from possession, Kelly v. Dierks, supra, the tenant in possession is liable for the fair rental value. Assuming that the finding of "exclusion" relied upon as bringing this rule into effect is correct, the application to the present case clearly is erroneous. The "presumed" exclusion of defendant did not occur until June, 1963, hence the rule cannot be applied against plaintiff's claim for taxes paid prior to the claimed exclusion. Unless this be accepted as correct this Court should overrule the cases just cited.

One further consideration discloses the inequity resulting from affirmance of this judgment. The general rule as to contribution for improvements made by a cotenant is that equity will compensate the cotenant for improvements made in good faith, when of a necessary and substantial nature materially enhancing the value of the common property. 68 C.J.S. Partition § 139. The rule as to the extent of compensation to a cotenant making improvements

requires allowance of the amount by which the value of the property is enhanced. The text states the rule in § 139(d), supra, and the decision in Manor v. Liles, supra, appears in the annotations showing this Court's adoption of the rule. And, the Manor case states that *in absence of a demand to be let into possession, or an attempt to enter,* the cotenants out of possession could not claim they had been excluded, or had been denied the right of possession. Defendant made no claim or demand in the present case, but the majority affirms the trial court's finding that defendant was excluded from the premises. This despite the elements required for exclusion as enumerated in Kelly v. Dierks, supra.

The equitable basis for the rule allowing a cotenant compensation for improvements is that other cotenants may not be unjustly enriched by receiving advantage from the enhancement of value, to which they contributed nothing. In Dalgarno v. Baum, 182 Va. 806, 30 S.E.2d 559, that court applied the equitable doctrine in favor of the cotenant who made the improvements, without regard to whether other cotenants assented to the improvements.

The first principle and the final object of equity is to do right and justice, and thus will not permit one party to enrich himself unjustly at the expense of another. It is undeniable that the trial court's judgment was contrary to both law and equity, and provided a vehicle for defendant to be unjustly enriched at plaintiff's expense. This Court does not hesitate to reverse judgments based upon jury's verdicts. J. C. Penney Co. v. Swartz, Okl. 364 P.2d 111; Transport Ind. Co. v. Page, Okl., 406 P.2d 980. I find no reason for holding this trial court's findings and judgment of greater potency than the findings of a properly instructed jury. This Court's power to set aside an erroneous judgment is unquestioned when justice requires this be done. Our action in controlling inferior courts embraces this power. Our right to exist and function as a court ultimately must rest upon our power to dispense fundamental justice. In our form of government this is imperative. The record and the judgment in this case unmistakably reflects misapplication of law and equity, and results in complete defeat of ultimate justice.

I dissent.