Dear Chairman Hale,
The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions:
1) Under the definitions set forth in 59 O.S. 199.1 (1971), whendoes the art of "demonstrating" cease and the art of "instructing"begin?
 2) May the Cosmetology Board, under its rules and regulations,allow "guest artists," not licensed in this state, to demonstratecosmetic products at Trade Shows?
With respect to your first question seeking the distinction between a "demonstrator" and an "instructor", we note that both terms are defined in Laws 1979, C. 216 199.1 (to be codified as 59 O.S. 199.1 (1979)). The Board of Cosmetology is empowered by appropriate rules and regulations to determine the nature and extent of activities that each person operating under "demonstrator" or "instructor" licenses may perform. Title 59 O.S. (1978). Whether the activities performed by an individual fall within the definitions of "operator", "instructor" or "demonstrator" is a question of fact for the Board to determine.
Your second question involves Board authorization to a "guest artist", not licensed as an operator, instructor or demonstrator, to demonstrate cosmetic products at a trade show. The statutes do not define a "guest artist." Presumably, one who is a guest artist would perform one or more of the functions authorized to be performed by an operator, instructor or demonstrator. The provisions of Laws 1979, C. 216 199.1, supra, require that one not licensed as an operator or instructor must obtain a demonstrator's license if the activities to be performed include the demonstration of any cosmetic preparation:
 ". . . by applying the preparation with his or her hands upon the hair or body of another . . ." 59 O.S. 199.1(h).
While the Board may under its statutory authority, define the requirements necessary for obtaining a license under the statutory categories of "demonstrator", "instructor" or "operator," anyone functioning in such a capacity must, nonetheless, be licensed by the Board.
There appears to be no prohibition under the statutes which hinders the Board from finding that a foreign state's licensing requirements are sufficient to allow reciprocity in Oklahoma. Nonetheless, although the Board might find the requirements for reciprocity exist, a license from the Oklahoma Cosmetology Board is still required before a person may engage in the activities set out under the statute.
The Board's Rules and Regulations dealing with "great artists" provide:
 "(4) The Board will allow any licensed instructor, technician, demonstrator from any State, or any member of the Oklahoma State Styles Committee to participate as guest artists in a trade show or special classes not to exceed three days.
 "A notice shall be sent to the Board when such guest artists are engaged with full explanation of the work they will do."
Thus, a conflict arises between the statutory requirement that the Board license all demonstrators and instructors and the Board's rule which allows demonstrators, technicians and instructors with out of state licenses to carry on such demonstrations at trade shows in this state without obtaining an appropriate license from the Board.
The Board may not, by rule or regulation, exempt certain persons from licensing requirements under the statute. The Board has only those powers delegated to it. Adams v. Professional Practices Commission, 524 P.2d 934
(1974).
It is, therefore, the opinion of the Attorney General that theCosmetology Board is required by statute to license all persons whoengage in the art and practice of demonstrating, instructing or operatingcosmetology within the State of Oklahoma; one who is a guest artistperforming one or more of the functions authorized to be performed by alicensed operator, instructor or demonstrator must obtain the appropriatelicense from the Oklahoma Board of Cosmetology.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
KAY HARLEY JACOBS, ASSISTANT ATTORNEY GENERAL