Dear Honorable Taylor,
The Attorney General has received your request for an official opinion asking, in effect:
 (1) Pursuant to the duties and requirements of the Oklahoma Pollution Remedies Act, 82 O.S. 926.1 et seq. (1981), may the Oklahoma Water Resources Board modify an existing, adopted water quality criterion, e.g. DO (dissolved oxygen), so as to establish a new criterion which is less stringent than the existing, adopted criterion for any waters of the State, or any portion or segment thereof ?
 (2) May the Oklahoma Water Resources Board expend public funds for the purpose of modifying an existing, adopted water quality criterion, e.g. DO (dissolved oxygen) so as to make that criterion less stringent than the adopted, existing criterion?
 (3) May the Oklahoma Water Resources Board change a beneficial use designation if the result is to make the beneficial use less stringent?
 (4) May the Oklahoma Water Resources Board change a beneficial use designation to a less stringent one if the original beneficial use designation was made by the Board based on a factual error?
 (5) May the Oklahoma Water Resources Board establish beneficial use designations which are inconsistent with the historical facts concerning a stream or stream segment? For example, if a stream, or segment thereof, once hosted small mouth bass, may the Oklahoma Water Resources Board classify that stream or segment other than (a) ("little a") even though the stream may not presently host small mouth bass?
 (6) May the Oklahoma Water Resources Board establish any water quality criteria less stringent than established by the United States Environmental Protection Agency or less stringent than contained in existing Oklahoma water quality standards for any waters of the state?
Your questions may be answered in part by reviewing and supplementing Attorney General Opinion No. 84-124. That opinion addressed the question of whether the Oklahoma Water Resources Board ("Board") could adopt a statewide anti-degradation policy consistent with 40 C.F.R. § 131.12, which allows for lower water quality or limited degradation of certain waters. The opinion of the Attorney General was that the "Oklahoma Water Resources Board may not adopt a statewide anti-degradation policy which allows for lower water quality or limited degradation of certain waters."
The critical language of the question and Opinion are the words "lower water quality or limited degradation." Oklahoma statutes do not allow the lowering of water quality of Oklahoma waters. Your questions deal mainly with the classification of Oklahoma waters rather than with their actual water quality. As in Attorney General Opinion No. 84-124, your questions necessitate a review of both federal and state laws.
The Federal Clean Water Act (33 U.S.C.A. 1251 — 1376) and regulations adopted pursuant thereto set minimum requirements which must be met in all navigable waters in the United States. "Navigable waters" is defined as "the waters of the United States, including the territorial seas." 33 U.S.C.A. 1362(7). Courts have consistently held that Congress intended to give the term "navigable waters" the greatest possible constitutional interpretation. United States v. Byrd, 609 F.2d 1204 (7th Cir. 1979). Water quality standards established under the Clean Water Act are minimum standards and states have the authority to set more stringent standards. See, Attorney General Opinion No. 84-124.
The Oklahoma Pollution Remedies Act defines "waters of the state" as:
 "all streams, lakes, ponds, marshes, watercourses, waterways, wells, springs, irrigation systems, drainage systems and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which are contained within, flow through, or border upon this state or any portion thereof, except privately owned reservoirs used in the process of cooling water for industrial purposes, provided that water released from any such reservoir into a stream system of the state shall be and become waters of the state." 82 O.S. 926.1
(1981).
From this definition one can see that Oklahoma laws and regulations include virtually all bodies of water in the state thus including waters not regulated under the Clean Water Act. No special treatment is afforded particular portions or segments of state waters except for the one stated exception.
Title 40 C.F.R. § 131.3 sets out the following definitions applicable to water quality standards adopted pursuant to the Clean Water Act:
 "(b) Criteria are elements of State water quality standards, expressed as constituent concentrations, levels, or narrative statements, representing a quality of water that supports a particular use. When criteria are met, water quality will generally protect the designated use.
* * *
 "(e) Existing uses are those uses actually attained in the water body on or after November 28, 1975, whether or not they are included in the water quality standards.
 "(f) Designated uses are those uses specified in water quality standards for each water body or segment whether or not they are being attained.
* * *
 "(i) Water quality standards are provisions of State or Federal law which consist of a designated use or uses for the waters of the United States and water quality criteria for such waters based upon such uses. Water quality standards are to protect the public health or welfare, enhance the quality of water and serve the purposes of the Act." (Emphasis in original).
Therefore, pursuant to the Clean Water Act, the Board sets a se or uses for a particular body of water and then establishes certain criteria that are necessary to protect those use(s). The use(s) and criteria together make up the water quality standards for that body of water. Oklahoma statutes do not distinguish between "designated uses," "best uses" and "present and future best uses." (See, 82 O.S. 926.2, 82 O.S. 926.3(6) and82 O.S. 926.6 (1981), respectively). However, the federal definition for "designated uses" can provide guidance to the interpretation of Oklahoma statutes.
 I.
Your first question asks whether the Board may change an existing criterion to a less stringent one. Title 82 O.S. 926.3 and 82 O.S. 926.6
(1981) authorize the Board to adopt and modify water quality standards. As was noted supra, the criterion is an element of water quality standards, so the Board has the authority to modify a criterion. Attorney General Opinion No. 84-124 explains that lower water quality of state waters is not allowed under Oklahoma statutes. To the extent the lowering of the criterion would cause the lowering of the water quality of a body of water, it would not be proper under Oklahoma law.
However, a situation may exist where the criteria established for a particular use are higher or more stringent than are necessary to protect the use of a certain body of water. If the criteria are also higher than are necessary to maintain the water quality of that body of water, they could then be lowered. But they could be lowered only to the point where the existing use and water quality of the water would be maintained or improved. Further, because Oklahoma laws do not make special exceptions for portions or segments of waters of the state, this reasoning applies to all portions of these waters.
 II.
Your second question asks whether public funds may be expended by the Board to modify an existing water quality criterion to a less stringent criterion. As was noted in section I, supra, the Board has the authority to modify a criterion to a less stringent one, therefore public funds may be properly expended for that purpose.
 III.
Your third question asks whether the Board may change a beneficial use designation to a less stringent use. Title 40 C.F.R. § 131.10(g) provides:
 "States may remove a designated use which is not an existing use, as defined in 131.3, or establish sub-categories of a use if the State can demonstrate that attaining the designated use is not feasible because:
 (1) Naturally occurring pollutant concentrations prevent the attainment of the use; or
 (2) Natural, ephemeral, intermittent or low flow conditions or water levels prevent the attainment of the use, unless these conditions may be compensated for by the discharge of sufficient volume of effluent discharges without violating State water conservation requirements to enable uses to be met; or
 (3) Human caused conditions or sources of pollution prevent the attainment of the use and cannot be remedied or would cause more environmental damage to correct than to leave in place; or
 (4) Dams, diversions or other types of hydrologic modifications preclude the attainment of the use, and it is not feasible to restore the water body to its original condition or to operate such modification in a way that would result in the attainment of the use; or
 (5) Physical conditions related to the natural features of the water body, such as the lack of a proper substrate, cover, flow, depth, pools, riffles, and the like, unrelated to water quality, preclude attainment of aquatic life protection uses; or
 (6) Controls more stringent than those required by sections 301(b) and 306 of the [Clean Water] Act would result in substantial and widespread economic and social impact." (Emphasis in original).
However, 40 C.F.R. § 131.10(h) provides:
"States may not remove designated uses if:
 (1) They are existing uses, as defined in 131.3, unless a use requiring more stringent criteria is added; or
 (2) Such uses will be attained by implementing effluent limits required under sections 301(b) and 306 of the [Clean Water] Act and by implementing cost effective and reasonable best management practices for nonpoint source control."
It is apparent from a review of relevant federal regulations hat federal law would allow the Board to change a beneficial use designation to a less stringent one if a factual showing of any of the conditions described in 40 C.F.R. § 131.10(g) can be made and if section (h) does not apply. However, in order to determine whether the Board has the authority to change the beneficial use designation to a less stringent one in Oklahoma, state statutes must also be scrutinized.
Title 82 O.S. 926.6 (1981) authorizes the Board to "group [waters of the state] into classes according to their present and future best uses for the purpose of progressively improving the quality of such waters andupgrading them from time to time by reclassifying them, to the extent that is practical and in the public interest." (Emphasis added).
The Oklahoma Legislature has specifically provided that state waters are to be classified for the purpose of improving their quality and reclassified for the purpose of upgrading them. See also, Attorney General Opinion No. 84-124. Further, the reclassification to upgrade the quality of a body of water is to be done only when the upgrading will be practical and in the public interest. The language is clear so there is no need to resort to rules of statutory construction to interpret its meaning. United States v. Ray, 488 F.2d 15 (10th Cir. 1973).
The statute does not set forth any exceptions. Further, "an agency created by statute may only exercise the powers granted by statute and cannot expand those powers by its own authority." Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980).
Language in Attorney General Opinion No. 84-124 can be paraphrased to read as follows: The Board's authority to reclassify waters of the state is not absolute. Rather, this authority is conditional and can only be exercised if the reclassification of the waters upgrades them. Reclassification to a less stringent use with its attendant lowering of water quality standards would involve a direct and unwarranted expansion of this conditional authority and is impermissible in light of the above quoted limited powers doctrine of Marley v. Cannon, supra.
 IV.
The response to question number three shows that beneficial use designations may not be changed to less stringent ones under normal circumstances. Your fourth question asks whether there is an exception to that general rule for situations where the original beneficial use designation made by the Board was too stringent because it was based on a factual error. In other words, can the Board correct its mistake?
The statutory language of 82 O.S. 926.6 (1981) appears to prohibit reclassification of state waters to less stringent beneficial uses even under these circumstances. Oklahoma case law does not address the question of whether a state agency can change a regulation to correct a mistake in light of an apparent statutory prohibition.
The United States Supreme Court addressed a similar situation regarding the powers of the United States Environmental Protection Agency ("EPA") pursuant to the Clean Water Act. The Supreme Court determined that although 301(e) of the Clean Water Act (33 U.S.C.A. 1311(e)) states that the EPA may not modify any requirement of 301 insofar as toxic materials are concerned, "it makes little sense to construe the section to forbid the EPA to amend its own standards, even to correct an error or to impose stricter standards." Chemical Mfrs. Ass'n v. Natural Res. Defense Coun.,105 S.Ct. 1102, 1108 (1985). (Emphasis added). The Court held that the variance allowed by the EPA pursuant to a regulation which appeared to conflict with the 301(1) modification prohibition did not "threaten to frustrate the goals and operation of the statutory scheme set up by Congress," because:
 "The nature of FDF variances has been spelled out both by this Court and by the Agency itself. The regulation explains that its purpose is to remedy categories which were not accurately drawn because information was either not available to or not considered by the Administrator in setting the original categories and limitations. 40 C.F.R. § 403.13(b). An FDF variance does not excuse compliance with a correct requirement, but instead represents an acknowledgement that not all relevant factors were taken sufficiently into account in framing that requirement originally, and that those relevant factors, properly considered, would have justified — indeed, required — the creation of a subcategory for the discharger in question. As we have recognized, the FDF variance is a laudable corrective mechanism, `an acknowledgment that the uniform . . . limitation was set without reference to the full range of current practices, to which the Administrator was to refer.' EPA v. National Crushed Stone Assn., 449 U.S. 64, 77-78, 101 S.Ct. 295, 303
— 304, 66 L.Ed.2d 268 (1980). It is, essentially, not an exception to the standard setting process, but rather a more fine-tuned application of it." Chemical Mfrs. Ass'n v. Natural Res. Defense Counc., 105 S.Ct. at 1110.
The Supreme Court emphasized the fact that the EPA had very specific regulations that set out the factual basis ("information was either not available to or not considered by the Administrator") which allowed the otherwise prohibited modification.
When reasoning of the Supreme Court in this case is applied to 82 O.S.926.6 (1981), it appears the Board has the authority to correct its beneficial use designation mistakes if it does so pursuant to validly adopted rules and regulations. The Board does not at this time have rules or regulations which address the procedure to be followed by the Board when correcting a beneficial use designation mistake. Section 301(2) of the Administrative Procedures Act ("APA") (75 O.S. 301 — 75 O.S.326 (1981)) defines "rule" as "any agency statement of general applicability . . . that implements, interprets or prescribes substantive law or policy[.]"
75 O.S. 302(a) of the APA states:
 "In addition to other rule-making requirements imposed by law each agency shall:
 "(2) adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available[.]" (Emphasis added).
Absent a rule setting out the procedure to be used by the Board to change a beneficial use designation to a lower designation because of a mistake, the Board may not make such a change. See, Adams v. ProfessionalPractices Commission, 524 P.2d 932 (Okla. 1974). At such time as the Board properly adopts such a rule or regulation, the Board may change a beneficial use designation to a less stringent one to correct a factual error.
 V.
In your fifth question you ask whether the Board may establish beneficial use designations which are inconsistent with the past uses of a stream. Title 82 O.S. 926.6(A) (1981) authorizes the Board "to group such waters into classes according to their present and future best uses." (Emphasis added). The statute clearly directs the Board to classify streams according to their present and future (rather than past) best uses. Also, 40 C.F.R. § 131.3(e) defines "existing uses" as uses actually attained on or after November 28, 1975.
Your example implies that if a stream hosts small mouth bass it must be classified as "(a)". The (a) designation prohibits any new point source discharges of waste or increased loading from an existing point source except under certain conditions. Whether a stream which hosts small mouth bass must be designated as (a) is a question of fact which cannot be answered by this Opinion. However, assuming that a small mouth bass stream requires an (a) designation, if the stream in question hosted small mouth bass as an "existing use" on or after November 28, 1975, the stream must have at least the (a) designation. Prior to that time, if the use of the stream was formally classified by the Board as (a), it would have to maintain that classification at a minimum. See, Section III,supra.
 IV.
Your last question asks whether the Board may establish any water quality criteria less stringent than established by the EPA or less stringent than contained in existing Oklahoma water quality standards.
Section 304(a) of the Clean Water Act (33 U.S.C. § 1314(a)) requires the EPA Administrator to develop and publish criteria for water quality accurately reflecting the latest scientific knowledge. Title40 C.F.R. § 131.3(c) explains that this information is issued to states as guidance for use in developing criteria. Section 131.11 mandates the following:
 "States must adopt those water quality criteria that protect the designated use. Such criteria must be based on sound scientific rationale and must contain sufficient parameters or constituents to protect the designated use. For waters with multiple use designations, the criteria shall support the most sensitive use."
Further, 131.20 requires states to hold public hearings to review water quality standards at least every three years. The results of the review must then be submitted to the Regional Administrator of the EPA for review and approval. (40 C.F.R. § 131.20(c)). Any state revisions to the water quality standards must be approved within sixty (60) days or disapproved within ninety (90) days. The notification of disapproval must specify changes needed to assure compliance with the Clean Water Act and40 C.F.R. § 131.21 and also explain why the state standard is not in compliance. If the state does not adopt the changes specified by the Regional Administrator within ninety (90) days after notice of the disapproval, the Administrator must promulgate the standard for the state. 40 C.F.R. § 131.22.
Clearly, under federal law the Board may adopt criteria less stringent than those developed by the EPA under 304(a) of the Clean Water Act, only if the EPA approves the criteria. As was explained in Section I, supra, the Board may adopt criteria less stringent than contained in adopted Oklahoma water quality standards only so long as the criteria protects both the existing use and water quality of the body of water affected.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. The Oklahoma Pollution Remedies Act, 82 O.S. 926.1 et seq. (1981), authorizes the Oklahoma Water Resources Board to modify an existing water quality criterion to a less stringent one only so long as the new criterion continues to maintain or improve the existing use and water quality of the waters affected.
 2. Pursuant to 82 O.S. 926.3 and 82 O.S. 926.6 (1981), the Board may properly expend public funds to modify an adopted water quality criterion of a body of water of the state to a less stringent criterion.
 3. Although Federal law would allow the Board to change a beneficial use designation to a less stringent designation under specified circumstances, 82 O.S. 926.6 (1981) authorizes the Board to reclassify the use of waters in Oklahoma only for the purpose of upgrading them.
 4. The Board may only change a beneficial use designation to a less stringent use designation to correct a factual error. Such a change may not be made absent the requisite rule or regulation required pursuant to 75 O.S. 302(a) (1981).
 5. The Board may not establish beneficial use designations which are inconsistent with the historical facts concerning a stream or stream segment for "existing uses" as that term is defined by Federal law, of streams since November 28, 1975. Prior to that time, the historical facts are relevant to the extent a stream use was formally classified by the Board. The historical classified use must be maintained as a minimum.
 6. The Board may modify existing water criteria set forth in Oklahoma water quality standards and approved by the Environmental Protection Agency ("EPA") only if the modified criteria are approved by the EPA and will maintain or improve existing uses and water quality of the waters affected.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
SARA J. DRAKE, ASSISTANT ATTORNEY GENERAL CHIEF, PUBLIC PROTECTION DIVISION