Dr. Warren ADAMS, Waurika Independent
School District No. 23, Petitioners,

v.

The PROFESSIONAL PRACTICES COM-
MISSION, Mr. Carl White,
Chairman, Respondents.

No. 46894.

Supreme Court of Oklahoma.

July 9, 1974.

Edwards & French by Larry French,
Seminole, for petitioners.

Fagin, Hewett, Mathews & Fagin by Eugene Mathews, Oklahoma City, for respondents.

HODGES, Justice.

This is an application to assume original jurisdiction and petition for writ of prohibition to prevent the respondent, Professional Practices Commission (PPC) from proceeding further in an action now pending before it. The initial question presented is who has the right to request a hearing before the Professional Practices Commission.

An inquiry was held by the Board of Education of Waurika, Oklahoma, which concerned the moral conduct of Dr. Warren Adams (Adams) and certain expenditures incurred by him. The board found that many of the accusations were hearsay and refused to take any action against the superintendent on the basis of the accusations.

Thereafter, on June 1, 1973, seventeen persons, some of whom were teachers in the Waurika school system, filed an unverified complaint with the PPC charging Adams with willful neglect of duty. (The Statute under which the complaint was filed requires that the complaint be verified. See 70 O.S.1971 § 6–120.

Adams was notified that a hearing authorized by 70 O.S.1971 § 6–120 would be held on June 25, 1973, and that each party would be allowed to present evidence and witnesses with the right to cross-examine opposing witnesses. The hearing was rescheduled several times. Copies of the complaints were not received by Adams until September 25, 1973.

■ Petitioner Adams alleges that only a person charged with violation of professional standards has the right to request a hearing before the PPC.

The statute, 70 O.S.1971 § 6–120, provides in pertinent part:

"The commission in administering these criteria shall afford any person charged with violation of professional standards the right to a hearing before the com-

mission. The commission shall have authority to reprimand or warn members of the profession. The commission, with a majority sitting at a hearing, upon a verified complaint filed with them, may, upon sufficient proof presented, make a decision as to whether or not a certificate should be suspended or revoked and, if such decision be made, immediate notice of the decision shall be sent to the teacher involved by registered mail and to the State Board of Education.

"A teacher who has been charged by complaint before said commission shall be given notice of the hearing thereon twenty (20) days before said hearing by registered mail, and copies of said complaint shall be provided to said teacher."

The statute does not stipulate that a person charged with violation of professional standards has the "right" to request a hearing before the PPC. Instead, it provides that the PPC shall afford the right to a hearing. This is merely a statutory pronouncement of the constitutional right of the petitioner to procedural due process. The method and procedure to be utilized in initiating a hearing before the PPC is usually clarified by the rules and regulations of the commission or state agency.

The PPC is given the initial responsibility of developing, through the teaching profession, criteria of professional practices in areas of contractual obligations on the part of teaching personnel, admission to and continuance in professional service, and ethical performance of members of the profession. 70 O.S.1971 § 6–119.

■ The PPC acknowledges that the Administrative Procedures Act is applicable insofar as appeal from its actions are concerned However, the PPC has failed to comply with the provisions of the Administrative Procedures Act, 75 O.S.1971 § 251 which provides that any commission possessing rule making powers *shall* file a certified copy of its rules and regulations with the Secretary of State and two duplicate copies with the State Librarian and Archivist. Any rule and regulation of the

commission is void unless filed and published in compliance with the act. See State v. Freeman, 370 P.2d 307, 312 (Okl. 1962).

It is provided by 75 O.S.1971 § 302 that:

"(a) In addition to other rule-making requirements imposed by law each agency shall:

"(1) adopt as a rule a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests;

"(2) adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available, including a description of all forms and instructions used by the agency;

"(3) make available for public inspection all rules and all other written statements of policy or interpretations formulated, adopted, or used by the agency in the discharge of its functions;

"(4) make available for public inspection all final orders, decisions and opinions."

■ An administrative agency may not under the guise of its rule making power exceed the scope of its authority and act contrary to the statute which is the source of its authority. Its authority to make rules for its various procedures does not include authority to make rules which extend their powers beyond those granted by statutes. Boydston v. State, 277 P.2d 138, 139 (Okl.1954). California Employment Commission v. Kovacevich, 27 Cal.2d 546, 165 P.2d 917, 921 (1946). It is, however, necessary and proper for administrative agencies to adopt rules of procedure as to matters coming under its jurisdiction. Bruce Motor Freight v. Lauterbach, 247 Iowa 956, 77 N.W.2d 613, 616 (1956).

■ The teachers of this state are entitled to be treated according to a previously established uniform system of published rules and regulations pertaining to professional practices. See United States v. Griglio, 467 F.2d 572, 576 (C.A. 1st Cir. 1972).

■ Proper administrative procedure requires that the rights of parties and the procedure of the agency on hearings be made the subject of agency regulations so that the parties may be advised of their rights. Mazza v. Cavicchia, 15 N.J. 498, 105 A.2d 545, 552 (1954).

The rationale for requiring administrative rule making was set forth in Boller Beverages, Inc. v. Davis, 38 N.J. 138, 183 A.2d 64, 71 (1962). The court stated:

"The theory of administrative rule-making is, of course, that in certain fields and in certain respects the public interest is better served by delegating a large part of detailed lawmaking to the expert administrator, controlled by policies, objects and standards laid down by the legislature, rather than by having all the details spelled out through the traditional legislative process. Administrative rule-making remains in essence, however, the enactment of legislation of general application prospective in nature. The object is not legislation ad hoc or after the fact, but rather the promulgation, through the basic statute and the implementing regulations taken as a unitary whole, of a code governing action and conduct in the particular field of regulation so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance. Without sufficiently definite regulations and standards administrative control lacks the essential quality of fairly predictable decisions. Persons subject to regulation are entitled to something more than a general declaration of statutory purpose to guide their conduct before they are restricted or penalized by an agency for what it then decides was wrong from its hindsight conception of what the public interest requires in the particular situation."

The Professional Practices Commission possesses only the authority conferred on it by statute. All orders and rules made by it must conform with the statutes to be valid. Since no rules have been adopted by the PPC it has no authority to conduct a hearing until such time as the PPC has complied with the Administrative Procedures Act.

WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.