2003 OK 114

**Melba C. BOSTON and Glen C. Boston, Plaintiffs/Appellants,**

v.

**Robert T. BUCHANAN, M.D., and Chester W. Beam, M.D. Individuals; Plastic and Reconstructive Institute; and Saint Anthony Hospital, Oklahoma City, Oklahoma, Defendants/Appellees.**

**No. 96,470.**

Supreme Court of Oklahoma.

Dec. 23, 2003.

Rehearing Denied April 20, 2004.

---

Michael H. Brady and Ronald A. Schaulat, Oklahoma City, OK, for Plaintiffs/Appellants.

Michael J. Heron, Nathan A. Lockhart, Oklahoma City, OK, for Defendant/Appellee, St. Anthony Hospital.

J. Roger Hurt, Oklahoma City, OK, for Defendants/Appellees, Robert T. Buchanan, M.D., Chester W. Beam, M.D., and Plastic and Reconstructive Institute.

SUMMERS, J.

¶ 1 This case involves a trial court's dismissal of an action based upon its determination that the action was not diligently prosecuted by Plaintiffs. The primary issue on certiorari is the difference between dismissing an action pursuant to 12 O.S.2001 § 1083, and dismissing an action in the exercise of a trial court's inherent power as set forth in the first two sentences of Rule 9(b) of the Rules for District Courts. The trial court used both the statute and the Rule as authority for dismissing the action. Because § 1083 does not apply in this case, and because the trial court erroneously used the § 1083 criteria in applying its inherent power[1] in Rule 9(b), we reverse the judgment of the District Court, and vacate the appellate opinion that affirmed that judgment.

¶ 2 A husband and wife brought a medical malpractice action in the District Court of Oklahoma County in 1995, and some discovery occurred. In November 1997 the action was dismissed because of Plaintiffs' failure to diligently prosecute the action. Plaintiffs refiled their action in October 1998, and service of process occurred in April 1999. Defendants filed answers in April and May 1999. Interrogatories and requests for production of documents were sent to Plaintiffs in May 1999. Plaintiffs responded in July 1999.

¶ 3 Then on April 3, 2001 the trial court mailed to the parties a notice of intent to dismiss the case "pursuant to Rule 9 of the Rules for District Courts for failure to diligently prosecute this action, as the last action of record in this case occurred on the 15th day of July, 1999." The notice scheduled a hearing for the matter in May 2001. Plaintiffs' attorney filed a motion to enter the cause on a jury docket. Defendants objected to the motion to enter the cause on a jury docket, because there had been "almost two (2) years inactivity in this case", and because the last activity had been plaintiffs responses to Defendants' discovery requests in 1999.

¶ 4 The District Court's order states that the case came on for hearing on the court's Disposition Docket, and that notice was mailed to the parties. The Court then found that the case should be dismissed for failure to diligently prosecute pursuant to Rule 9(b),

---

1. The act of creating a court instills inherent power in that entity. For example: "The inherent judicial power of a court is that power which is essential to the court's existence, dignity, and functions.... Such power is not derived from legislative grant or specific constitutional provision, but from the very fact that this court has been created and charged by the Constitution with certain duties and responsibilities." *State v. Joubert,* 246 Neb. 287, 518 N.W.2d 887, 893 (1994). For further example: "The Inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.... Inherent power of the courts has existed since the days of the Inns of Court in common law English jurisprudence. .... It also springs from the doctrine of separation of powers between the three governmental branches. .... This power exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity. *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–399 (Tex. 1979), (citations and note omitted).

Courts in this state possess inherent powers to regulate the procedure by which rights are judicially enforced. For example: "The courts of general jurisdiction under such a Constitution have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property, or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require." *State v. Martin,* 1927 OK 147, 256 P. 681, 684, *quoting, Crocker et al. v. Justices of Superior Court,* 208 Mass. 162, 94 N.E. 369, (1911). This Court needs no authorization conferred by the Legislature to make rules for the orderly procedure of hearing cases in District Courts. A "court" is defined, in part, as an entity that hears cases. We have said that: "We hold power to 'hear' a case includes power to make, and enforce, reasonable rules for orderly procedure before courts." *Puckett v. Cook,* 1978 OK 108, 586 P.2d 721, 723.

Rules of the District Courts and/or 12 O.S. 2001 § 1083, "whichever is applicable." We first address § 1083.

¶ 5 Section 1083 states as follows:

§ 1083. Actions not at issue and in which no pleadings filed for 1 year—Dismissal

Any action **which is not at issue** and in which no pleading has been filed or other action taken for a year and in which no motion or demurrer has been pending during any part of said year shall be dismissed without prejudice by the court on its own motion after notice to the parties or their attorneys of record; providing, the court may upon written application and for good cause shown, by order in writing allow the action to remain upon its docket.

12 O.S.2001 § 1083, (emphasis added). Plaintiffs argue that the case was "at issue" and not subject to dismissal pursuant to § 1083. We agree.

▉ ·¶ 6 In *Davidson v. Gregory*, 1989 OK 87, 780 P.2d 679, we said that: "A case is at issue for trial setting purposes when the issues are made up or when the defendant has failed to plead within the time allowed by law or by an order of the court." *Id.* 780 P.2d at 682, *citing*, 12 O.S.1981 § 666 [2] and *Cunningham v. Cunningham*, 1977 OK 203, 571 P.2d 839, 841. Issues that are "made up" consist of facts or conclusions of law presented by one party's pleadings, and controverted by the other party's pleadings. 12 O.S.2001 §§ 551, 552.[3] A similar rule is expressed by a Montana court thusly,

It is true that in certain circumstances under our system of pleading, when the answer is filed no further pleadings are necessary, and clearly in such a case it would be at·issue on the filing of an answer. In the case of *Roush v. Chester* it appears that the answer contains certain affirmative defenses or new matter to which the plaintiff has replied. When the parties to a suit have filed all their pleadings and pleading has ended, the case is at issue. *Andrew Stephens on Pleading* (2d Ed.) 147; 2 *Cooley's Blackstone*, 1091; *Black's Law Dictionary*, 657; *Dickerson v. Stoll*, 24 N.J.Law, 550 [(1854)].

*Roush v. District Court of Eighth Judicial Dist. for Cascade County*, 101 Mont. 166, 53 P.2d 96, 97–98 (1935).

¶ 7 We hold that a case is at issue when issues are made up, or when the defendant has failed to plead within the time allowed by law or by an order of the court. *Davidson v. Gregory, supra.* This will most often occur when an answer is filed and no further pleadings are necessary. Section 1083 clearly limits the scope of its application to an action which is not at issue. In the matter before us today answers were filed and no further pleading occurred. The action was at issue, and § 1083 does not apply.

¶ 8 The District Court cited Rule 9(b) of the Rules for the District Courts as alternative authority for dismissing the action. Rule 9 states in pertinent part as follows:

Diligence in prosecution

b. Where an action is not diligently prosecuted, the court may require the plaintiff to show why the action should not be dismissed. If the plaintiff does not show good cause why the action should not be dismissed, the court shall dismiss the action without prejudice. A court shall dismiss actions in which no action has been taken for a year as provided in 12 O.S.1981 § 1083.

12 O. S.2001 Ch. 2, App, Rules for District Courts, Rule 9.

---

**2.** The current version, 12 O.S.2001 § 666 states:

Time of trial

Actions shall be triable at the first term of court, after or during which the issues therein, by the time fixed for pleading are, or shall have been made up. When the issues are made up, or when the defendant has failed to plead within the time fixed, the cause shall be placed on the trial docket, and if it be a trial case it shall stand for trial at such term ten (10) days after the issues are made up, and shall, in case of default stand for trial forthwith. When any demurrer shall be adjudged to be frivolous the cause shall stand for

hearing or trial in like manner as if an issue of fact had been joined in the first instance.

**3.** 12 O.S.2001 § 551:

Trial defined

A trial is a judicial examination of the issues, whether of law or fact, in an action.

12  O.S.2001 § 552:

How issues arise—Kinds of issues

Issues arise on the pleadings, where a fact or conclusion of law is maintained by one party, and controverted by the other. There are two kinds. First, of law; Second, of fact.

■ Rule 9(b) does not expressly limit its application to cases at issue, and Defendants argue that the dismissal can stand on the authority of Rule 9 alone. The legal issue presented by this argument is whether § 1083 limits the scope of Rule 9(b).

¶ 9 Rule 9(b) was created by an Order of this Court in 1961, and provided for dismissal of an action because of a plaintiff's lack of diligence in prosecuting the action. 12 O.S. 1961 Ch. 2, App.[4] Section 1083 was enacted approximately four years later in 1965. 12 O.S.Supp.1965 § 1083. Since Rule 9(b) was created prior to § 1083 it is obvious that the Rule was not originally created to implement § 1083. The Rules for District Courts were substantially modified in 1973, but Rule 9 was not changed from its 1961 version. 12 O.S.Supp.1973 Ch. 2., App. Then in 1981 the Rules were again revised and Rule 9 was amended to its present form. 12 O.S.1981 Ch. 2, App.

¶ 10 The first two sentences of Rule 9(b) state that a district court may dismiss an action, and they do not refer to cases not being at issue, nor a one-year period of inactivity. The last sentence of Rule 9(b) refers to a period of inactivity for one-year and dismissal of a case pursuant to § 1083. May a court dismiss a case that meets the criteria of the first two sentences of Rule 9(b), but does not satisfy the criteria of the last sentence applying § 1083? We have indicated at different times that Rule 9(b) was limited or was not limited by § 1083, and we now resolve this conflict.

¶ 11 After Rule 9 was amended in 1981 we were presented with the situation whether the first two sentences of Rule 9(b) acted as authority independent of § 1083. In *Matter of Estate of Goyne*, 1986 OK 69, 733 P.2d 391, the trial court issued an order setting a "motion to vacate hearing on agreement and the next filing in the case." *Id.* 733 P.2d at 395. Twenty-two months elapsed without an additional filing and the trial court declined to dismiss.

¶ 12 Our analysis in *Goyne* included reasoning that Rule 9(b) was based upon § 1083, and that § 1083 would not support dismissing an action when a motion remained pending for adjudication. *Id.* 733 P.2d at 395. We affirmed the order declining to dismiss the action, saying that "In this case the motion to vacate remained pending during the two year period and was not subject to dismissal **pursuant to Rule 9**." *Id.* 733 P.2d at 395, emphasis added. Thus, if Rule 9(b) was based upon § 1083 and § 1083 would not work as authority for dismissal, Rule 9(b) would also be insufficient authority for a dismissal.

¶ 13 Then in *B & M International Trading Co. v. Woodie Ayers Chevrolet, Inc.*, 1988 OK 133, 765 P.2d 782, we affirmed a dismissal pursuant to Rule 9(b). We noted that motions remained pending and that § 1083 did not apply. However, instead of linking application of Rule 9(b) to the circumstances mentioned in § 1083, as we did in *Estate of Goyne,* we affirmed the dismissal by separating the application of Rule 9 from § 1083. We said:

> Section 1083 directs the court to dismiss without prejudice any action "which is not at issue and in which no pleading has been filed or other action taken for a year and in which no motion or demurrer has been pending during any part of said year ..." **Since the record here reflects that all of defendant's demurrers, motions to make more definite and certain, and motions to compel more complete answers to interrogatories were pending at the time of the trial court's dismissal, section 1083 does not apply, and the court must exercise its discretion to dismiss under Rule 9(b).** Dismissal under that Rule must be without prejudice.
>
> Finding no authority upon which the trial court could dismiss the present action with prejudice, **we hold that dismissal under Rule 9(b) was proper,** but that such dismissal is to be without prejudice.

---

4. 12 O.S.1961 Ch. 2, App., Rule 9 states:
   Diligence in Prosecution.
   Any cause of action shall be subject to dismissal for want of prosecution, upon the court's own motion, if not diligently prosecuted. In any case in which summons is not issued or waiver filed within ninety (90) days after the filing of the petition, or alias summons is not issued within thirty (30) days after return of the summons not served, the action may be dismissed by the court without notice to the plaintiff.

*B & M International Trading Co.,* 1988 OK 133, ¶¶ 16–17, 765 P.2d at 784, (emphasis added).

We conclude that *B & M International Trading Co.* is correct.

¶ 14 We have recognized a court's inherent power to dismiss an action because of a party's failure to prosecute an action. *Winters By and Through Winters v. City of Oklahoma City,* 1987 OK 63, ¶¶ 8–9, 740 P.2d 724, 726. Rule 9 provided, prior to enactment of § 1083, for dismissal upon a party's failure to prosecute an action. When § 1083 was created it also provided for circumstances when an action could be dismissed for a party's failure to prosecute. The parties do not point to any language in § 1083 showing an intent by the Legislature to make § 1083 circumstances, nor those in other statutes,[5] the exclusive grounds for dismissal upon a party's failure to prosecute. We conclude that the first two sentences of Rule 9(b) are authority for a trial court to dismiss an action independent of applying § 1083.

¶ 15 The first two sentences of Rule 9(b) state:

"Where an action is not diligently prosecuted, the court may require the plaintiff to show why the action should not be dismissed. If the plaintiff does not show good cause why the action should not be dismissed, the court shall dismiss the action without prejudice."

The issue before us today is whether plaintiffs showed "good cause" why the action should not be dismissed.

¶ 16 A trial court adjudication of "good cause" is reviewed on appeal using an abuse of discretion standard. *Fischer v. Baptist Health Care of Oklahoma,* 2000 OK 91, ¶ 6, 14 P.3d 1292, 1293; *State v. Vaughn,* 2000 OK 63, ¶ 25, 11 P.3d 211, 217. An abuse

of discretion standard includes an appellate review of both issues of law and fact. *Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591, 608. An "issue of law" refers to those legal principles used to determine the correctness of the trial court's decision on appellate review. *Christian,* 2003 OK 10 at ¶ 45, 65 P.3d at 609.

¶ 17 One issue of law involves the often-stated public policy that legal controversies should be decided upon their merits. For example, when discussing default judgments we said the following:

While it is true that diligence of litigants in attending to their matters pending in the courts is of importance, and while it is a significant function of the courts that the litigation before them be determined and disposed of as rapidly as possible, it is also important that all litigants be given a reasonable opportunity to have their day in court, and to have their rights and liberties tried upon the merits. The latter is and should be the primary right of the parties and duty of the courts.

*Beck v. Jarrett,* 1961 OK 162, 363 P.2d 215, 218.

We have also emphasized the public policy that encourages actions being tried on their merits when reviewing a judgment dismissing an action for delay in service of process. *Fischer v. Baptist Health Care of Oklahoma,* 2000 OK 91, ¶¶ 7–8, 14 P.3d 1292, 1293–1294. In *Campbell v. Pharr,* 1995 OK CIV APP 153, 916 P.2d 266, (published by Order of Court of Civil Appeals), that court noted *Beck* and discussed opinions from Arizona and Washington involving dismissals for lack of prosecution and trial court proceedings for vacating those dismissals.

¶ 18 In *Gorman v. City of Phoenix,* 152 Ariz. 179, 731 P.2d 74 (1987), the court ex-

---

5. *See e.g.,* 12 O.S.2001 § 683:

Dismissal of action—Grounds and time
An action may be dismissed, without prejudice to a future action:
First, By the plaintiff, before the final submission of the case to the jury, or to the court, where the trial is by the court.
Second, By the court, where the plaintiff fails to appear on the trial.
Third, By the court, for the want of necessary parties.

Fourth, By the court, on the application of some of the defendants, where there are others whom the plaintiff fails to prosecute with diligence.
Fifth, By the court, for disobedience by the plaintiff of an order concerning the proceedings in the action.
Sixth, In all other cases, upon the trial of the action, the decision must be upon the merits.

plained the purpose of its rule for dismissing cases when certain litigation procedures were not timely performed:

> Uniform Rule V should be used to dispose of abandoned cases and to encourage litigants to resolve their disputes quickly. It should not be used to trap the unwary or the momentarily negligent. The purpose of Uniform Rule V(e) is procedural, not substantive; the rule is merely "a convenient administrative practice" designed to rid court calendars of inactive or abandoned cases and to prod the judge and the attorneys involved to bring cases to trial as quickly as possible.

*Gorman,* 731 P.2d at 78.

In *Vaughn v. Chung,* 119 Wash.2d 273, 830 P.2d 668 (1992), (en banc), that court explained that an administrative provision was designed to purge dormant cases from court dockets, and secondarily, to protect litigants from dilatory counsel. *Id.* 830 P.2d at 670.

¶ 19 *Beck* states that a party should not be denied a reasonable opportunity to have his or her case decided on the merits. Courts must construe Rule 9(b) consistent with that opportunity. *Campbell, Gorman,* and *Vaughn* indicate that a dismissal for failure to prosecute should not be used against the momentarily negligent, but used to prod attorneys to bring cases to trial and dismiss the truly dormant cases. We agree that Rule 9(b) should not be used against the momentarily negligent.

¶ 20 Rule 9(b) places a burden upon the party resisting dismissal to show "good cause" for not dismissing a case. First, in an effort to show that the delay was "momentarily" and not perpetual, Plaintiffs point to a motion to enter the cause on the jury docket that was filed after the court's notice but prior to dismissal. Secondly, they point to illness on the part of both Plaintiffs, and they allege that this hampered discovery. Third, they state that they were not given notice of the standard of conduct required prior to a court exercising its inherent powers and issuing a notice of dismissal, and that because of

this lack of notice the trial court was required to issue a warning prior to its notice, or allow them to cure the offense by modifying their litigation conduct after the notice was issued. Fourth, they argue that the dismissal will result in a dismissal with prejudice, although the face of the order states that it is without prejudice. Fifth, they point to the trial court's alleged improper use of a prior action in determining whether the present action was timely prosecuted. We reverse the trial court on its use of § 1083 and Rule 9(b), and need not address these grounds as framed by Plaintiffs, except as they relate to § 1083 and Rule 9(b) and as their resolution is necessary for appellate adjudication herein.

¶ 21 Plaintiffs filed a motion to enter the cause on the jury docket. The trial court declined to consider the motion. In *Beck* we said that:

> The courts should always be loath to deny a determination of a case upon its merits by reason of the actual or supposed fault of an attorney and one of the parties litigant. Especially is this true when issue of fact showing a cause of action of apparent merit on the part of the plaintiff and a defense of contended merit on the part of the defendants has been joined by appropriate pleadings.

*Beck v. Jarrett,* 363 P.2d at 218.

When the trial court stated that it would not consider the motion it was concluding, for the purpose of Rule 9(b), it simply did not matter if one or more of the parties was prepared to advance the action for trial on the merits.

¶ 22 The Rules for District Courts provide that a scheduling order should be issued "as soon as feasible after the case is at issue." 12 O.S.2001 Ch.2, App. 1, Rule 5(C). Local Rule 17 of the Seventh Judicial District states that the trial judge may enter a scheduling order on the date the motion to enter is heard.[6] Defendants objected to the motion to enter the action on the jury docket. But they did not argue that the case was premature for a motion to enter or a scheduling order. In other words, it appears that the

---

**6.** Seventh Judicial District Court Rule 17(A) provides that:

A. The parties shall file a motion to enter after a case is at issue. On the date the motion is heard, the trial judge may enter a scheduling

order in substantial compliance with the form approved by the Supreme Court. The assigned judge may enter a scheduling order at any time after the case is at issue.

motion to enter and resulting scheduling order would have been proper but for the trial court's *sua sponte* dismissal notice.

¶ 23 Clearly, lawyers should not calendar litigation dates based upon a disposition docket or a court's *sua sponte* notice of dismissal. These two actions taken by a trial court are not alternatives to a lawyer's intra-office case-tracking system. On the other hand, a trial court should consider both the public policy of having cases tried on their merits and a party's intent to advance a case by a motion to enter when the trial court seeks to dismiss a case for failure to prosecute. We agree that merely filing a motion to enter would not *ipso facto* cure a lengthy lapse by party's failure to prosecute an action.

¶ 24 Plaintiffs state that the effect of the dismissal is a dismissal with prejudice, although the order stated that it was a dismissal without prejudice. They are correct. A party is allowed only one refiling if a case fails other than on its merits if the statute of limitations has run. 12 O.S.2001 § 100. They argue that such a dismissal may not be allowed.

¶ 25 The dismissal herein was based upon Rule 9(b), consistent with a court's inherent power to dismiss a matter for a party's failure to timely prosecute. Public policy favors this inherent power of a court no less than a plaintiff's interest in having a matter tried on its merits. We decline to adopt Plaintiffs' argument that would necessarily give precedence to a party's dilatory conduct over a trial court's inherent powers.

¶ 26 The Arizona court in *Gorman*, however, stated that when "expiration of the statute of limitations turns a dismissal without prejudice into a dismissal with prejudice, the trial court must take an especially hard look at the actual circumstances of the case before it." *Id.* 731 P.2d at 78. Further, what we said in *Beck v. Jarrett, supra*, is equally applicable in addressing this argument. Thus, when the substance of a trial court disposition-docket dismissal of a claim

at issue will have the necessary result of barring a merits adjudication upon that claim's refiling, the trial court should take a hard look at the circumstances before it. Circumstances which would support a finding of lack of "good cause" and dismissal without prejudice might well not support such a finding when the dismissal is terminal due to § 100.

¶ 27 Plaintiffs state on certiorari that the circumstances provided the trial court with good cause for not dismissing the action. They argued that their illnesses prevented a more active prosecution of the case. Defendants disputed this. However, we conclude that the appellate record is insufficient to review this ground.[7]

¶ 28 The certified docket sheet for the trial court proceeding does not show any filed response by Plaintiffs to the notice to show cause other than the motion to enter. The appellate record does not contain a transcript of the hearing held on the court's dismissal. The appellate record contains a Narrative Statement by Plaintiffs, a Response to Plaintiffs' Narrative Statement authored by Defendants, and the trial court's order in response to these two filings.

¶ 29 This Court's rules provide for a narrative statement in lieu of a transcript (Okla.Sup.Ct.R.1.30), and a statement in lieu of a record on appeal (Okla.Sup.Ct.R.1.31.). Plaintiffs' statement states that it is submitted pursuant to Rule 1.30 and is in lieu of a transcript. Rule 1.30 is derived from former Rule 1.22 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, app. 2. We explained Rule 1.22 in *Cox v. Smith*, 1984 OK 34, 682 P.2d 228. The statement must be timely filed, state reliance upon the rule, and inform the other parties of an opportunity to object and consequences of not objecting. The trial judge settles and approves the statement and objections, and signs the narrative statement submitted to the Supreme Court. *Id.* 682 P.2d at 231–232. These requirements appear in present Rule 1.30.[8]

---

7. We have affirmed a trial court order setting aside a default judgment when the default was the result of a lawyer's illness. *Tedford v. Divine*, 1987 OK 18, 734 P.2d 283, 285–286.

8. 12 O.S.2001 Ch. 15, App., Okla.Sup.Ct.R. 1.30:

Preparation of Narrative Statement of Trial or Proceedings in Lieu of Transcript

If no stenographic report of the evidence or proceedings at a hearing or trial was made or if a transcript of the reporter's notes cannot be

¶ 30 In the case today, Plaintiffs' narrative makes statements of fact relating to particular medical problems of Plaintiffs. One of Plaintiffs' lawyers signed the attached affidavit stating that the statement was true and correct to the best of her knowledge and belief. Defendants' objected with statements that no admissible evidence was introduced at the hearing on the nature and extent of Plaintiffs' medical problems. Defendants further stated that Plaintiffs' counsel did make some statements regarding health problems of Plaintiffs at the hearing, but that no evidence was presented on the issue of whether the health problems were of such a nature to prevent either Plaintiffs or their counsel from proceeding with the case.

¶ 31 The judge filed a separate statement stating that "she could not recall exactly, but did not believe she had as much detail regarding Plaintiffs' medical conditions as what was contained in Plaintiffs' Narrative Statement." The judge-authored statement then states that therefore both Plaintiffs' and Defendants' statements are to be submitted on appeal. The judge-signed statement appears to incorporate therein both the proposed statement by Plaintiffs and the objections by Defendants.

¶ 32 What were the medical conditions of Plaintiffs? Did Plaintiffs' produce facts on their medical conditions to the trial court in a judicially cognizable form for that proceeding? Neither of these questions is "settled" or resolved by the trial court's signed state-ment. The narrative statement *in lieu of transcript* is for the purpose of making a record of what actually happened at a previous trial or proceeding. This Court is presented with conflicting statements of what was said at the hearing. These conflicting statements are insufficient to create a settled statement on facts relating to Plaintiffs' medical conditions. Further, because we reverse the trial court on other grounds we need not attempt to address from the inconsistent narrative statements whether the form of the proof before the trial court was proper.

■ ¶ 33 Plaintiffs suggest that Rule 9(b), by reason of its lack of specificity, is too vague to constitutionally support a dismissal. Applying a statute, or rule, with a facially uncertain meaning to a specific case includes a review of the previous judicial construction of that statute or rule. This is so because "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute...." *U.S. v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

■ ¶ 34 Judicial decisions construing a common law principle are appropriate for a court's analysis when a court also construes the meaning of a statute that codifies that common law principle. *See, e.g., Schepp v. Hess,* 1989 OK 28, 770 P.2d 34, 38, (common law term-time power codified in 12 O.S. § 1031.1 is coextensive with the common law term-time power); *U.S. v. Ramirez,* 523 U.S. 65, 72–73, 118 S.Ct. 992, 140 L.Ed.2d 191

prepared or where the judgment involves an involuntary loss of liberty, personal freedom or incarceration and where the appealing party is an indigent, the party desiring to take the appeal under these rules (or any other party) may prepare a statement of the evidence or proceedings in the narrative form from the best available means including the party's recollection for use in lieu of a stenographic transcript.

Where no stenographic report was made, this statement shall be filed with the court clerk and submitted to the opposite parties within ten (10) days after the filing of the petition in error; where a transcript of the court reporter's notes cannot be prepared, this statement shall be filed with the court clerk and submitted to the opposite parties within twenty (20) days after the party desiring to appeal discovers that the reporter's notes are unavailable or cannot be transcribed. These time limits may be extended by the trial court for good cause shown. The statement that is filed shall contain a certificate that copies have been submitted to the opposite parties. The narrative shall (1) be sworn to before an officer authorized by law to administer oaths (2) set forth that Rule 1.30 is relied on (3) inform the opposing party of the time and method for objections or amendments, and (4) advise the opposing party of the consequences of failure to object or move for proposed amendments. The opposite parties may object or propose amendments to the statement within ten (10) days after receipt. Thereupon, the statement, and any objections thereto, or proposed amendments shall be submitted, upon due and advance notice to all parties, to the trial judge for settlement and approval and as settled and approved shall be included by the clerk in the record on appeal. All narrative statements must be signed by the trial judge prior to submission to the Supreme Court, regardless of whether an objection or amendment was filed in the trial court.

Use of the narrative statement must be noted on the designation of record.

(1998), (decisions construing the Fourth Amendment apply to construction of 18 U.S.C. § 3109). The first two sentences of Rule 9(b) restate one aspect of a court's inherent power recognized at common law. Thus, our opinions discussing this power are applicable when we construe Rule 9(b), and impart notice of the meaning to Rule 9(b) to those potentially within the scope of that Rule who would urge its invalidity for vagueness.

■■■ ¶ 35 In *Baker v. Deichman,* 1939 OK 327, 94 P.2d 246, we said that "The power of the courts to dismiss for failure to prosecute has long been recognized." *Id.* at 247. We then noted opinions from several jurisdictions where cases were dismissed following delays in prosecution varying from three to ten years. *Id.* We then said that:

While time is not the sole issue in determining the question it nearly always happens, as it did in this case, that other factors arise, such as the loss of evidence, death of witnesses or parties, or other developments, rendering it inequitable to continue permission to prosecute. Both from an appraisal of the situation in this case and from comparison of it with other decisions in the books we are of the opinion that the trial court did not abuse its discretion in dismissing the petition.

*Baker v. Deichman,* 1939 OK 327, 94 P.2d at 247.

*Baker* states that passage of time is not solely dispositive of whether an action should be dismissed, and that prejudice to defendants must also be considered.[9]

■■■ ¶ 36 In *B & M International Trading Co. v. Woodie Ayers Chevrolet, Inc.,* 1988 OK 133, 765 P.2d 782, we quoted with approval from *Cervi v. Town of Greenwood Village,* 147 Colo. 190, 362 P.2d 1050 (1961), and we stated that:

"although a trial court has inherent power to dismiss a case for want of prosecution, such power is not unlimited, and should not be exercised where the record shows, as here that both parties nursed the case along with the court's approval." *B & M International Trading Co.,* 765 P.2d at 784, *quoting, Cervi,* 362 P.2d at 1051."

We thus focused upon a fact other than the mere passage of time. Indeed, the *Cervi* court discussed other factors for a court to consider when dismissing an action because of a delay in prosecution, *e.g.,* settlement negotiations, plaintiffs' hiring new counsel, and the defendant being responsible for part of the delay. *Id.* 362 P.2d at 1053. In *Cervi* the court further noted that the plaintiffs were prepared to proceed with the case at the time the dismissal was being considered by the trial court. *Id.* Both *Baker* and *B & M International Trading Co.* show that the exercise of a court's inherent power to dismiss an action because of a party's delay in prosecuting that action is not determined solely by the passage of a particular period of time.

¶ 37 The narrative statement prepared by Plaintiffs purports to contain the reasons set forth by the trial judge explaining why the action was dismissed. That statement contains no reference to prejudice suffered by the Defendants because of the delay in prosecuting the action, nor does the narrative statement signed by the trial judge. The narrative statement provided by Defendants states that the trial judge "noted it was prejudicial for defendants to defend care in that 1993 surgery, and post-surgical care carrying over from 1994 to 2001." But the narrative statement prepared by Defendants provides no facts or reasons therein how Plaintiff's action, to the extent that it related to "post-surgical care carrying over from

9. To the extent that Rule 9 rests upon an exercise of this Court's inherent power, that language is construed according to previously articulated common-law standards, that is, an exercise of sound judicial discretion utilizing applicable court opinions, Constitution, and statutes: " 'As Justice Cardozo held in *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153, the power is inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants, and again in *American Life Ins. Co. v. Stewart,* 300 U.S. 203, 215, 57 S.Ct. 377, 380, 81 L.Ed. 605, 111 A.L.R. 1268, 'A court has control over its own docket.' This does not mean an arbitrary control. The control must be in the exercise of a sound discretion.' " *Hambright v. City of Cleveland,* 1960 OK 184, 360 P.2d 493, 496, *quoting, Montana in State ex rel. Kennedy v. District Court,* 121 Mont. 320, 194 P.2d 256, 264, 2 A.L.R.2d 1050 (1948).

1994 **to 2001**" caused Defendants prejudice in defending an action **in 2001.** We note the passage of eight years from the surgery in 1993 to the dismissal of the action in 2001, but the narrative statements do not provide any hint for identifying the nature of the prejudice suffered by Defendants in defending such allegations. The order of dismissal is silent on the issue of prejudice suffered by Defendants.

¶ 38 Defendants also state that the trial court said that the passage of time in this case was extremely prejudicial to Defendants. However, Plaintiffs' argue that no showing was made in the trial court that Defendants would suffer any prejudice. The narrative statements do not refer to any specific facts used for the trial court's determination of prejudice. Defendants state that the trial court's finding of prejudice is simply this: If the case is allowed to proceed and Plaintiffs are unable to make assurances that their future medical conditions would be sufficiently healthy to participate in further discovery and trial, then the matter would not be tried until some distant undetermined point in the future, and Defendants would be prejudiced by a potentially unresolved claim.

¶ 39 This argument is rejected for two reasons. First, in responding to a different argument Defendants state that no facts were before the trial court showing a lack of ability on the part of either Plaintiffs or their counsel in participating in discovery. If no facts are before the court to show that Plaintiffs cannot participate in discovery and trial, then no facts support Defendants' concept of prejudice that is based upon their view of an uncertain future trial date. Further, reversing the trial court's order does not necessarily allow Plaintiffs to delay trying the case until an indefinite time·in the future. In this case, plaintiffs filed a motion to enter and, presumably, litigation deadlines will be set by the trial court upon remand. Rule 5(C) of the Rules for District Courts, *supra.*

¶ 40 When the trial court uses an incorrect legal standard we review that issue *de novo. Christian v. Gray,* 2003 OK 10, ¶ 43, 65 P.3d 591, 608, *explaining, Scoufos v.*

*State Farm Fire and Cas. Co.,* 2001 OK 113, ¶ 1, 41 P.3d 366, 367. A reading of the narrative statements by both parties and the signed statement of the trial court shows that the trial court was applying the § 1083 standard—an absence of activity in the case for a year. No authority appears in the briefs that would support a trial court's using this fact as the sole basis for exercising its inherent power to dismiss an action pursuant to the first two sentences of Rule 9(b).

¶ 41 Neither the order of dismissal nor the various narrative statements make any distinction between the standards for dismissing a case pursuant to § 1083 and an exercise of a court's inherent powers pursuant to Rule 9(b). This Court, as an appellate tribunal, does not make first-instance rulings. *ACCOSIF v. American States Insurance Co.,* 2000 OK 21, ¶ 18, 1 P.3d 987, 995. We thus decline to make first-instance findings of the presence of facts, if any, relevant to the trial court's exercising its inherent power to dismiss this action because of delay in prosecution.

¶ 42 In sum, 12 O.S.2001 § 1083 does not serve as a basis for dismissing this action, because it was at issue. The trial court's reliance upon that statute is misplaced. The exercise of the trial court's inherent power to dismiss the matter is reversed for reason that the record affirmatively shows that trial court was using § 1083 as a standard for dismissing the action, as opposed to the common-law standards for dismissing an action pursuant to the first two sentences of Rule 9(b). Whether this case is proper for dismissal pursuant to those common-law standards we decline to address in advance of trial court's determination of the issue.

¶ 43 The opinion of the Court of Civil Appeals is vacated, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

¶ 44 WATT, C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, JJ.- Concur.

¶ 45 HARGRAVE, WINCHESTER, JJ.-Concur in Result.

¶ 46 OPALA, V.C.J.-Dissents.

OPALA, V.C.J., dissenting.

¶ 1 The court mischaracterizes today the district court's Rule 9(b)[1] dismissal authority by referring to it as drawn from "inherent power." The erroneous use of the term elevates the process of **statute-authorized rulemaking** to a **constitutional dimension. The question here is not whether Rule 9(b) may be converted in a proper context from its present status (as statutory) to that of one with a constitutional dimension, but whether, in the posture of this cause, it should be jurisprudentially boosted to a higher place in the hierarchy of legal norms.** Convertibility of Rule 9(b) need not be tested; today it can be assumed. I write once again to condemn the court's habit of improperly labeling the legal sources of judicial rulemaking power by indiscriminately boosting these norms to constitutional status.

1. The terms of Rule 9(b), Rules For District Courts of Oklahoma, 12 O.S.2001, Ch. 2, App., are:

    b. Where an action is not diligently prosecuted, the court may require the plaintiff to show why the action should not be dismissed. If the *plaintiff does not show good cause* why the action should not be dismissed, the *court shall dismiss the action without prejudice.* A court shall dismiss actions in which no action has been taken for a year as provided in 12 O.S. 1981 § 1083.
    (emphasis supplied).

2. *Wright v. Grove Sun Newspaper Co., Inc.,* 1994 OK 37, 873 P.2d 983, 987; *Tate v. Browning-Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1225–26.

3. The terms of 12 O.S.2001 § 2 are:

    The **common law,** as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.

4. The common law's legislative abrogation may not be effected by mere implication. *Tate, supra* note 2, at 1225–26; *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, 884. It must be clearly and plainly expressed. *McCormack v. Oklahoma Pub.*

I

**TODAY'S SUA SPONTE ELEVATION OF RULE 9(b) PROVISIONS TO AN IN-HERENT–AUTHORITY LEVEL IS NEITHER NECESSARY NOR LE-GALLY CORRECT**

A

**Sources of State Law Are Divided Into Three Classes: Constitutional, Statutory and Common Law**

*The Common Law*

¶ 2 The hierarchy for the state legal system's three sources of law ascribes to the **common law** the lowest rank—that which follows after the State's constitution and her legislative enactments.[2] By the mandate of 12 O.S.2001 § 2[3] the common law, whose corpus includes equity and ecclesiastical law, remains in full force unless explicitly modified (or abrogated) by statute or by the constitution.[4] The content of Oklahoma's declared common law consists of judicial opinions as well as court rules.[5] **The courts' equitable and common-law authority is drawn from the text of § 2.**[6]

Co., 1980 OK 98, 613 P.2d 737, 740. A presumption favors the preservation of common-law rights. *Wright, supra* note 2 at 987; *State Mut. Life Assur. Co. of America v. Hampton,* 1985 OK 19, ¶ 3, 696 P.2d 1027, 1035, 1036 (Opala, J., concurring); *Reaves v. Reaves,* 1905 OK 32, 82 P. 490, 495.

5. In this **State's legal system** the common law forms "a dynamic and growing" body of rules that changes with the conditions of society. *Wright, supra* note 2, at 987; *McCormack, supra* note 4, at 740.

The **federal system's** hierarchy of legal sources is different. There, the common law has an extremely restrictive use. *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Cranfill v. Aetna Life Ins. Co.,* 2002 OK 26, ¶ 12 n. 5, 49 P.3d 703, 707. Because in the federal system the common law is not generally available as a source of judicial authority, federal jurisprudence on inherent powers does not always match Oklahoma's own law. *Winters By and Through Winters v. City of Oklahoma City,* 1987 OK 63, ¶ 3, 740 P.2d 724, 729 (Opala, J., concurring in part and dissenting in part).

6. The body of England's customary or common law was known in the middle ages as that kingdom's "unwritten law"—*Regni Angliae lex non scripta.* The common law and equity are now a single body of unwritten law. *McCormack, supra* note 4, at 740; *Mueggenborg v. Walling,* 1992 OK 121, 836 P.2d 112, 115 (Opala, C.J., concurring).

## Statutory Law

¶ 3 The next legal source above that of the common law consists of **statutory enactments. A statute-authorized rule,** though of force equal to an enactment, must yield to any contrary legislation.[7] If there be conflict between a statute-authorized rule and enacted statutory law, the latter will control over the former. Another statute-derived class of judicial rulemaking is represented by **rules that embrace statutory law** within their provisions. That rule genre is akin to a statute. It continues in force so long as the statute remains in effect.

## Constitutional Law

¶ 4 The **highest legal source in the system is the state constitution, whether embodied in its text, caselaw or in a court rule.** A slightly **different echelon** of constitutional power source is called **"inherent."** State courts claim as "inherent in them" those constitutional powers which, though neither granted to nor withheld from them by the state constitution (and not found in any inferior source of the system), must nonetheless be conceded to the judiciary as a separate department of the government because their exercise is deemed absolutely essential (or reasonably necessary) for the performance of the courts' constitutionally mandated mission.[8] The **cardinal difference** between **constitutional-law sources** and those of **inherent powers** is that the latter are drawn from the constitution's **complete textual vacuum** (or from its **mere silence**). Inherent power can hence be destroyed by subsequent infusion into the vacuum of a **discordant content.** The use of inherent power may also be barred by the constitution's text that shows the claimed power's absence or its allocation to another service of government.[9]

¶ 5 This court's inherent power finds an eloquent and legally correct recognition in *In re Integration of State Bar of Oklahoma.*[10] There, the court claimed for itself a constitutionally invested power to control and regulate the practice of law and the licensing, ethics and discipline of legal practitioners in this State. In the wake of *In re Integration* Oklahoma lawyers are presently licensed and supervised by a single body, centrally organized by the Oklahoma Supreme Court's exercise of its claim to inherent power. **Only an express constitutional amendment could now terminate that power's use.** In a later jurisprudential source, *Puckett v. Cook,*[11] the court also acknowledged that the judiciary's inherent power is anchored to the constitution. There, it held unconstitutional a procedural statute restrictively regulating courthouse-level consolidation of cases for trial. *Puckett,* which teaches that circumscription of the judiciary's power to run its own docket impermissibly invades the courts' "inherent power," explicitly concedes that in order to **override a procedural statute the**

7. Rules promulgated by the Supreme Court (which are not based on any identified statutory or constitutional authority) have the force and effect of law. They are binding upon litigants, courts and counsel, but must not contravene constitutional or statutory provisions upon the same subject. *Eberle v. Dyer Const. Co.,* 1979 OK 49, ¶ 27, 598 P.2d 1189, 1192–1193; *Carlile v. National Oil & Dev. Co.,* 1921 OK 163, ¶ 34, 201 P. 377, 83 Okl. 217; see in this connection *Northwest Datsun v. Oklahoma Motor Vehicle Com'n,* 1987 OK 31, ¶¶ 14–15, 736 P.2d 516, 520; *Adams v. Professional Practices Commission,* 1974 OK 88, ¶ 11, 524 P.2d 932, 934.

8. This definition of "inherent power," expressed in *Winters, supra* note 5, at ¶ 1 n. 1, at 728 n. 1 (Opala, J., concurring in part and dissenting in part), finds approval in Felix F. Stumpf, INHERENT POWERS OF THE COURTS, SWORD AND SHIELD OF THE JUDICIARY, Ch. II (Concept of Inherent Powers), Part A (Statement of the General Rule), p. 5 (The National Judicial College (1994)), quoting from *Winters, supra* note 5, at ¶ 1 n. 1, at 728 n. 1 (Opala, J., concurring in part and dissenting in part). *See also State v. Superior Court,* 78 Ariz. 74, 275 P.2d 887, 889–890 (1954); *O'Coin's, Inc. v. Treasurer of County of Worcester,* 362 Mass. 507, 287 N.E.2d 608, 613–614 (1972); Connors, *Inherent Power of the Courts—Management Tool or Rhetorical Weapon?* Just.Sys.J., pg. 63 (1973).

9. Power withheld from the judiciary by an explicit provision of the Constitution may not be claimed as "inherent." Inherent power, whose use is limited to that which is declared essential to a court's capacity for the discharge of its constitutionally mandated mission, **always must be derived from the Constitution alone.** While it need not be either expressed or even implied, it is never available for invocation if its exercise is explicitly prohibited by the State's supreme law.

10. 1939 OK 378, 95 P.2d 113, 114.

11. 1978 OK 108, 586 P.2d 721.

**judiciary must draw its trumping authority directly from the constitution.**

¶ 6 This State's legislature statutorily recognizes that *inherent power* is indeed a source of law that commands from a rung higher than the common law and the body of statutory enactments. By the terms of 20 O.S.2001 § 24 [12] the legislature set apart (from statute-rested rules) the courts' inherent rulemaking authority. This recognition concedes that the latter class of court rules is indeed impervious to legislative tinkering.

### B.

### Statute-authorized Rules Do Not Rise To A Constitutional Dimension Drawn From The Judiciary's "Inherent Power"

¶ 7 Court rules are not a distinctly separate source of law. Their place in the hierarchy of legal norms depends in every instance on the underlying authority for each rule's promulgation. If authority for a rule is drawn from the constitution, the rule itself takes on a constitutional dimension. If the power for the rule is derived from statute, the rule has statutory dimension. Lastly, if the rule is drawn from the body of common law, it has no more than common-law status. The legislature can by statute repeal any court-fashioned rule that rests either on common-law or statutory authority, but it is powerless to effect a change in constitutional law whose corpus embraces the regime of the courts' inherent power. Rulemaking is one of three legitimate functions of the judiciary. The other two are adjudication and management. Judicial rulemaking is characterized as the judiciary's legislative function. Its use is severely restricted because Oklahoma's judicial department is **without constitutional lawmaking power** over procedure.[13] That function belongs to the legislature.[14]

¶ 8 Rule 9(b), adopted for the district courts together with many others, was promulgated under the aegis of the court's explicit statutory authority.[15] The court's promulgation power for all the provisions that constitute the Rules for the District Courts [16] was drawn not from the constitution but rather from legislative law. In short, Rule 9(b), when given birth, clearly was not intended to rise above the level of statutory law.

¶ 9 By today's pronouncement the first two sentences of Rule 9(b) are said to restate one "aspect of **a court's inherent power recognized at common law.**" In this context the court misuses the term "inherent power" by making it fit for application to norms inferior to those of a constitutional dimension.[17] By

**12.** The terms of 20 O.S.2001 § 24 are:
Nothing herein shall *impliedly limit the rulemaking authority which the Supreme Court inherently has* or has by virtue of other statutory provisions.
(emphasis added).

**13.** The rulemaking regime is different in those states in which a state constitution confers on the judicial department the power to legislate on matters of court procedure to the exclusion of the legislature. In those states procedural rules of the judiciary are of a constitutional dimension. This is so because the judiciary's power to make rules for the conduct of the courts' business is drawn directly from the constitution. For an interesting pronouncement on the line of demarcation that separates matters of procedure from those of policy-making substance see *Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406 (1950).

**14.** *Board of Law Library Trustees of Oklahoma County, State of Okl. v. State ex rel. Petuskey*, 1991 OK 122, ¶ 10, 825 P.2d 1285, 1289.

**15.** The terms of 12 O.S.2001 § 74 provide:
The Justices of the Supreme Court shall meet every two (2) years during the month of June at the capitol of the state and revise their general rules, and make such amendments thereto as may be required to carry into effect the provisions of this Code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the district courts, the superior courts, the county courts and all other courts of record.

**16.** Rules for District Courts of Oklahoma, 12 O.S.2001, Ch. 2, App.

**17.** The court's pronouncement appears to have relied on the **aberrational teachings,** contained in many of this court's past opinions, which **equate inherent power's exercise with the norms of equity and common law.** That notion is at manifest variance with the hierarchical structure of legal norms in our system. It overlooks that norms crafted by use of inherent powers are drawn from the constitution. The identification of inherent power as that derived from equity and common law is clearly incorrect. *See, e.g., Winters, supra* note 5 (the trial court's authority to assess attorney's fee and costs against a party's attorney is there described as an "inherent equitable power"); *Orthopedic Clinic v. Jennings,* 1971 OK 16, 481 P.2d 139 (the trial court's

equating inherent power with the common law, the court has today impermissibly and erroneously **elevated** a statutory rule to one of a constitutional dimension. If the rule were, as the court pronounces, a product of the constitution-anchored inherent power, the legislature would indeed be impotent to change its text by enacting a different procedural regime. **Today's elevation of Rule 9(b)'s status is neither necessary nor legally correct.** The posture of this case does not call for testing whether the authority for Rule 9(b) provisions may be claimed to have been derived from inherent power and now qualifies their text for elevation to constitutional status.

## C.

### TODAY'S *SUA SPONTE* ELEVATION OF A STATUTE–AUTHORIZED RULE TO A CONSTITUTIONAL DIMENSION OFFENDS THE TIME–HONORED PRINCIPLE THAT NOT EVEN THE PRESSED CONSTITUTIONAL ISSUES WILL BE REACHED FOR RESOLUTION IN ADVANCE OF STRICT NECESSITY

¶ 10 Elevating a statute-authorized rule to a constitutional level creates a new norm of constitutional law. It is incorrectly accomplished here *sua sponte.* This is so because there is absolutely no necessity for its creation. Even when a pronouncement is pressed for by the parties (and not made *sua sponte,* as the court does today), a constitutional issue will not be reached in advance of strict necessity.[18] **This *sine qua non* princi-**

ple of constitutional judicature is plainly ignored and patently offended today.**

¶ 11 **The *sua sponte* elevation of Rule 9(b),** originally promulgated as statute-anchored and never before foreshadowed as having a pretense to constitutional status, **gives that rule alone—out of many others—complete protection from legislative abrogation.** Today's sudden *sua sponte* shift in the Rule 9(b) status will likely produce an unwelcome legislative response and is apt to dissuade the lawmaking body from its past practice of authorizing broad-scale judicial rulemaking.

¶ 12 I would not elevate to a constitutional dimension a norm of law, which initially came to life within the judicial system as statute-authorized, (a) in advance of strict necessity and (b) without adequate foreshadowing of the contemplated status change.

## II

### THE RECORD FOR APPEAL DOES NOT OVERCOME THE PRESUMPTION OF CORRECTNESS THAT ATTACHES TO A TRIAL COURT'S DECISION

¶ 13 The plaintiffs (appellants) have utterly failed to show that the trial court prevented them from raising issues that would protect the cause from dismissal on any discretionary ground. **There is in this case absolutely no record of courthouse proceedings.** A record of nisi prius oral proceedings may come to us in two different forms—that of a court reporter's transcript[19] and that of a rule-

---

power to vacate its own orders filed during the term is described as an "inherent equitable power"); *Fleming v. Baptist General Convention of Oklahoma,* 1987 OK 54, 742 P.2d 1087 (the court refers to the "inherent common-law power" of courts over their judgments); *Hassell v. Workman,* 1953 OK 210, 260 P.2d 1081 (the court describes the trial court's "inherent equitable power" as an instrument for preventing fraud or oppression). **I would overrule all of these flawed pronouncements (and others of similar import) insofar as they impermissibly intermix inherent powers with those of equity or the common law.**

18. Where the legal relief sought is affordable on non-constitutional grounds, consideration of constitutional infirmities is deemed precluded by a self-erected "prudential bar" of restraint. The prudential rule of necessity, adhered to by all

state and federal courts, teaches that constitutional issues must not be resolved in advance of strict necessity. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, ¶ 13, 927 P.2d 558, 565; In re Initiative Petition No. 347, State Question No. 639, 1991 OK 55, ¶ 2, 813 P.2d 1019, 1037 (Opala, C.J., concurring); *Smith v. Westinghouse Elec. Corp.,* 1987 OK 3, ¶ 2, n. 3, 732 P.2d 466, 468, n. 3; *I.N.S. v. Chadha,* 462 U.S. 919, 936, 103 S.Ct. 2764, 2776–77, 77 L.Ed.2d 317 (1983). *See also Schwartz v. Diehl,* 1997 OK 115, ¶ 9, 568 P.2d 280, 283; *Dablemont v. State Dept. of Pub. Safety,* 1975 OK 162, ¶ 9, 543 P.2d 563, 564.

19. Rule 1.33, Oklahoma Supreme Court Rules, 12 O.S.2001, App. 1.

authorized narrative report of evidentiary proceedings, which was settled by the trial judge.[20] What is here qualifies as neither of these two. Before the court is only a counsel's own version of the lawyers' oral recitations below. The record prepared for our use fails to show any effort on the appellants' part to adduce proof of any facts which would support an exercise of judicial discretion. Giving victory to the plaintiffs on this "record" ignores the law's presumption that courthouse decisions are to be accepted as correct, and the burden of overcoming that presumption rests on the appellant.[21]

## III

### SUMMARY

¶ 14 Rule 9(b) does not warrant today's *sua sponte* elevation to a constitutional dimension. All of its provisions are statute-authorized and hence the power for their promulgation was undisputedly drawn from legislative delegation of authority rather than from a conscious act of invoking the constitution's source of inherent power.

### *ORDER*

Petition for rehearing is denied.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 19TH DAY OF APRIL, 2004.

WATT, C.J., HODGES, HARGRAVE, KAUGER, EDMONDSON, JJ., concur.

OPALA, V.C.J., LAVENDER, BOUDREAU, WINCHESTER, JJ., dissent.

BOUDREAU, J., with whom OPALA, V.C.J., and LAVENDER and WINCHESTER, JJ., join, dissenting to the denial of rehearing:

¶ 1 I dissent to the Court's decision to deny rehearing in this case. In my view, our opinion is flawed in a number of respects, most particularly in the manner in which it interpreted 12 O.S.2001, § 1083. I would grant rehearing and issue another opinion which would, among other things, adopt the

interpretation of § 1083 urged by defendants and would discuss the interplay between § 1083 and Rule 9(b), 12 O.S.2001, Ch.2, App., Rules for District Courts.

¶ 2 12 O.S.2001, § 1083 reads as follows:

Any action *which is not at issue and in which no pleading has been filed or other action taken for a year and in which no motion or demurrer has been pending during any part of said year* shall be dismissed without prejudice by the court on its own motion after notice to the parties or their attorneys of record; providing, the court may upon written application and for good cause shown, by order in writing allow the action to remain upon its docket.

(Emphasis added.) Our opinion interpreted the phrase "at issue" in § 1083 to mean "when issues are made up, or when the defendant has failed to plead within the time allowed by law or by an order of the court." (Citation omitted.) *Boston v. Buchanan,* 2003 OK 114, ¶ 7, 89 P.3d 1034. Under this interpretation, an action is "at issue" when either (1) an answer is filed and no further pleadings are necessary or (2) when a defendant is in default. Conversely, a case is *not* "at issue" only when the time for a responsive pleading has not expired. Our opinion has construed § 1083 in a manner such that a dismissal will never occur under the statute.

¶ 3 The defendants correctly contend that this interpretation clearly frustrates the obvious intent of the statute to dismiss stale claims. They make the argument, with which I agree, that § 1083 supplies its own definition of "at issue". They point out that directly following the language "at issue" is the phrase "and in which no pleading has been filed or other action taken for a year and in which no motion or demurrer has been pending during any part of said year". Under the interpretation urged by defendants, a notice of intent to dismiss must be sent by the court when a year has passed

---

20. Rule 1.30, Oklahoma Supreme Court Rules, 12 O.S.2001, App. 1.

21. *KMC Leasing Inc. v. Rockwell Standard Corp.,* 2000 OK 51, ¶ 12, 9 P.3d 683, 688–89; *Okla-*

*homa Turnpike Authority v. New Life Pentecostal Church of Jenks,* 1994 OK 9, ¶ 15 n. 24, 870 P.2d 762, 768 n. 24.

without a pleading being filed or other action taken and a motion is not pending during that year. This construction of § 1083 dovetails precisely with Rule 9(b), which provides in part, "[a] court shall dismiss actions in which no action has been taken for a year as provided in 12 O.S.1983 § 1083."

¶4 In a rehearing opinion, I would clarify the interplay between § 1083 and Rule 9(b) to ensure that trial judges throughout the state effectively run their disposition dockets. In my view, § 1083 *requires* a trial court to identify all cases on his or her docket in which no pleading or motion has been filed or other action taken for a year. The statute then requires the judge to dismiss those cases without prejudice, after notice to the parties, unless a party, upon written application, establishes "good cause" for allowing the case to proceed. Rule 9(b), on the other hand, *allows* a trial judge to identify cases on her docket which she views as not being diligently prosecuted even though there may have been a pleading, motion or other action taken within the year.[1] The rule then allows the trial judge to require the plaintiff to show "good cause" why the action should not be dismissed.

¶5 In my view, this case should be reviewed under 12 O.S.2001, § 1083. As provided in § 1083, the trial judge afforded plaintiffs with an opportunity to show "good cause" why the case should not be dismissed. After the trial judge conducted the hearing, he dismissed the case impliedly finding the plaintiffs had failed to establish "good cause" why the case should not be dismissed. The record establishes that the evidence offered by plaintiffs in support of the "good cause" determination consisted solely of counsel's statements. Plaintiffs failed to offer any competent, admissible evidence. *See State v. Torres*, 2004 OK 12, ¶ 12, 87 P.3d 572 (stating counsel's arguments cannot serve as a substitute for legal proof).

¶6 Case law imposes upon the appellate courts the obligation to accord substantial deference to the exercise of discretion by the trial court, and to reverse only if the trial court made a clearly erroneous decision against reason and evidence. *Abel v. Tis-*

*dale*, 1980 OK 161, ¶ 20, 619 P.2d 608, 612. In addition, plaintiffs, as the appealing party, have the burden of showing by the record that the trial court's decision was an abuse of discretion. *See Meadows v. Wal–Mart Stores, Inc.*, 2001 OK 25, ¶ 5, 21 P.3d 48, 50. In my view, plaintiffs have clearly failed in this regard and I would affirm the trial court's dismissal of this case under 12 O.S. 2001, § 1083.

---

1. Rule 9(b) provides in part: "[w]here an action is not diligently prosecuted, the court may require the plaintiff to show why the action should not be dismissed." 12 O.S.2001, Ch.2, App., Rules for District Courts, Rule 9(b).